GULOTTA, Judge.
Plaintiffs appeal from a judgment decreeing that an earlier consent judgment *593 between the parties ordering specific performance of a contract to purchase immovable property is unenforceable since the act of sale was not passed on or before the expiration date fixed by the judgment. The consent judgment provided that the plaintiffs, the sellers, furnish good and merchantable title, but granted specific performance of an agreement sued upon which provided that the sellers would warrant title only against their own acts. Defendants refused to take title on or before the expiration date because of plaintiffs’ inability to convey a good and merchantable title.
Some factual background is necessary. On January 19, 1969, Sam J. Recile and Fargo Realty Co. acquired nine contiguous tracts of land, known as the Walnut Street properties, bounded by Walnut Street, Leake Avenue, Front Street and Audubon Park. At the time of purchase, Recile knew from his personal inspection of the property, and from the 1968 survey which was attached to the title binder that several encroachments (a fence, step and a shed) existed on one of the lots which rendered the title defective. However, since Recile’s intention was to acquire, the property adjacent to that lot on which the encroachments were placed, he chose to take title despite the defects. Once he acquired the second piece of property, the encroachments would not constitute an impediment.
Later in 1969, Recile met with plaintiff, James Parkerson, in the hope of convincing him to finance the anticipated development. An agreement was reached by which Parkerson advanced funds to Recile, and instead of a mortgage, Parkerson took title to the Walnut Street properties. It should be noted that in this transaction other properties were also transferred to Parkerson in anticipation of various real estate ventures, but these properties are not now involved in this litigation. Contemporaneously with the transfer of title from Fargo Realty Co. and Recile to Par-kerson, a net profits agreement was executed which bound the parties to share equally in the development or sale of the property. When Recile failed to develop the property, both parties became dissatisfied with the agreement, and as a result, they entered into a new agreement to purchase and sell, dated October 26, 1970, in which Parkerson agreed to sell to Recile, Fargo Realty Co., Transworld Title Corp., and S. Evans, Inc. the Walnut Street properties. The Recile group failed to take title on the date specified, and after several extensions and defaults, a new agreement to purchase and sell was executed on May 3, 1971. This agreement supposedly resolved all the financial difficulties between the parties. It was executed on a standard real estate form, except that Parkerson only contracted to warrant title against his own acts. Furthermore, another corporation, R-S, was substituted for Fargo Realty Co., and the agreement was executed in the name of R-S and Recile. Subsequently, the name R-5 was changed to Auster Oil and Gas Co.[1] Upon the failure of the Re-cile interests to take title on or before the expiration date as set forth in the May 3, 1971 agreement, plaintiffs[2] filed suit for specific performance to compel the transfer. Thereafter, a consent judgment was entered into ordering specific performance of the May 3, 1971 agreement, which included the provision for restrictive warranty, and further providing for the delivery of a good and merchantable title.
On the date specified in the consent judgment for the transfer of title, plaintiffs attempted to deliver the same title that they had acquired from the defendants, and the Recile interests refused to accept that title contending it was unmer-chantable because of the encroachments. Plaintiffs were unable to make the title *594 merchantable by removing the encroachments until nine months after the expiration date for the passing of the act of sale at a cost of approximately $15,000. Upon defendants’ initial failure to take title in January, plaintiffs sought by rule to have appropriate orders issue compelling defendants to take title or clarifying the consent judgment. This rule was dismissed.[3] After removing the encroachments, the Par-kersons sought to make the consent judgment executory. Subsequently, the Recile interests filed a separate suit for a declaratory judgment praying that the consent judgment be declared unenforceable because merchantable title was not tendered on January 10, 1973 (the expiration date for passing the act of sale) and for a cancellation of a subsequent judicial mortgage.[4] Both suits were consolidated for trial.
The trial judge granted defendants’ request for a declaratory judgment decreeing that the consent judgment was a valid judgment, but was unenforceable after January 10, 1973, the expiration date for the passing of the act of sale. He also ordered the judicial mortgage in favor of the plaintiffs erased and canceled. In his reasons for judgment, he stated that the consent judgment did not merely grant specific performance of the May 3 agreement (providing for a restrictive warranty) but was more in the nature of a novation requiring delivery of a good and merchantable title.
Plaintiffs, in seeking reversal, claim the consent judgment is ambiguous, and as such, the court should look to the pleadings, and actions of the parties, and hold that Parkerson was not obligated to deliver to the Recile interests any better title than he was obligated to deliver under the May 3 agreement, which required only a restrictive warranty.
Plaintiffs also contend that in a transaction which involves the same parties “good and merchantable title” means that the subsequent purchasers are only required to deliver to the sellers the same title that they originally received from the purchasers. Tn other words, “good and merchantable title” in this instance means good and merchantable as between the parties and not against the world.
Defendants contend that even if plaintiffs’ interpretation of “good and merchantable” is correct, they are, nevertheless, not compelled to accept title because a January, 1973 survey showed several encroachments in addition to those shown on the 1968 survey. They contend, therefore, that the title is not the same title that Par-kerson acquired from Recile in 1968.
Defendants also contend that the consent judgment is complete on its face and that the plaintiffs cannot seek to vary the terms of the agreement in the absence of allegations of fraud or error. Defendants also contend that “good and merchantable title” presupposes the existence of no impediment whatsoever either as between the parties or otherwise, and is a title which is not suggestive of litigation. Because of the inclusion of these words, defendants contend that they were not obligated to take a defective title despite the fact that they might have known about the encroachments.
None of the arguments advanced has merit because the consent judgment on its face is clearly contradictory. The consent judgment orders “specific performance of an agreement to purchase dated May 3, 1971.” That agreement provides “the seller shall deliver to the purchaser title without any warranties except against their own acts.” Nevertheless, the consent judgment further provides that the seller *595 “furnish good and merchantable title.” The consent judgment is contradictory by its terms because the encroachments which existed on the property not warranted by the seller in the May 3 agreement were impediments to the title which prevent the property from being merchantable.
In Greenwood v. City of New Orleans, 12 La.Ann. 426 (1857), the court recognized that a consent judgment acquires the force of the thing adjudged. However, in Emery v. Martel, 10 So.2d 267 (Orl.App.1942), the court held in order for a judgment to be valid :
“There must be, at least, reasonable legal certainty, and the rights of the parties, after a judgment has been pronounced, should not depend upon the discretion or fanciful beliefs of the one in whose favor the decree runs, nor of the law officer charged with the execution thereof.”
In the instant case, no valid judgment existed. Since the judgment contained a clear contradiction in terms, nothing was decided with reasonable legal certainty. It was precisely because of the contradiction in the judgment itself regarding the nature of the seller’s warranty, that the parties reached an impasse in their efforts to implement the judgment. Hence, this consent judgment never acquired the force of things adjudged.
Furthermore, a consent judgment is one based on the consent or compromise agreement between the parties. A compromise or consent judgment is a bilateral contract wherein the parties adjust their difference by mutual consent, thereby putting an end to a lawsuit with each party balancing the hope of gain against the fear of loss. See LSA-R.C.C. art. 3071; Lytle v. Commercial Insurance Co. of Newark, N.J., 285 So.2d 289 (La.App. 3rd Cir. 1973); and Bielkiewicz v. Rudisell, 201 So.2d 136 (La.App. 3rd Cir. 1967), and the cases cited therein. An essential element of every contract is consent, and without accord no contract exists. See LSA-C.C. art. 1819.
Because of its clear contradiction in terms, the consent judgment lacks both the consent and the quality of things adjudged; hence, the purported consent judgment is without force and effect. The parties now stand in the same position, and the record in the same posture as if the consent judgment had not been rendered. Accordingly, the judgment is reversed and the matter remanded for further proceedings consistent with the above.
Reversed and remanded.

. Fargo Realty Co., R-5, Auster Oil & Gas Co. and Transworld Corp. are hereinafter referred to as Recile interests.

. James D. Parkerson is joined as a party plaintiff by his daughter, Juliette Parkerson Lowe, who inherited her deceased mother’s estate.

. The trial judge reasoned that summary process could not be used for this purpose, and plaintiffs’ remedy was by ordinary process.

. Upon defendants’ failure to take title, plaintiffs filed a judicial mortgage for the amount of the contract price together with a vendor’s lien and mortgage on the property all in accordance with the terms and conditions of the consent judgment.