Ellis THOMAS, Appellant,

v.

STATE of Alaska, Appellee.

No. 2723.

Supreme Court of Alaska.

June 13, 1977.

Barbara J. Miracle, Phillip Weidner, Asst. Public Defenders, and Brian C. Shortell, Public Defender, Anchorage, for appellant.

Ivan Lawner, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

## OPINION

RABINOWITZ, Justice.

Appellant Ellis Thomas was convicted after a jury trial on three counts of sale of narcotics [1] and was sentenced on November 27, 1972, to a period of imprisonment of 10 years on each count, with the sentences on Counts I and II to be served consecutively and the sentence on Count III to be served concurrently. The superior court ordered that Thomas was not to be eligible for parole until he had served one-third of each of the two consecutive sentences.[2] After a jury trial, Thomas was also convicted of assault with a dangerous weapon and was sentenced on November 27, 1972, to a period of imprisonment of 10 years, to run concurrently with the narcotics sentences.[3] The effect of the sentences was that Thomas was ordered to serve a total of 20 years in prison, without eligibility for parole until he had served six and two-thirds years.

Thomas appealed the severity of the sentence in the assault case and both convictions; the convictions and sentence were affirmed by this court. *Thomas v. State,* 524 P.2d 664 (Alaska 1974) (assault with a

---

1. The indictment in the narcotics case, dated March 31, 1972, charges:

 Count I, that on or about March 21, 1972, . . . Ellis Thomas did unlawfully and feloniously sell and transfer a narcotic drug, heroin, to Norman Gee.

 Count II, that on or about January 25, 1972, . . . Ellis Thomas did unlawfully and feloniously sell and transfer a narcotic drug, heroin, to Officer Kroll of the Anchorage Police Department.

 Count III, that on or about January 21, 1972, . . . Ellis Thomas did unlawfully and feloniously sell and transfer a narcotic drug, heroin, to Officer Kroll of the Anchorage Police Department.

2. The judgment and commitment in the narcotics case, dated November 30, 1972, provides for

 10 years on Count I and 10 years on Count II. Count II to be served consecutively with Count I. Not eligible for parole until 1/3 sentence on each count has been served. Defendant sentenced to 10 years on Count III, to be served concurrently with the sentence imposed on Counts I and II.

3. The judgment and commitment in the assault with a dangerous weapon case, dated November 30, 1972, and affirmed by this court in *Thomas v. State,* 524 P.2d 664 (Alaska 1974), provides for 10 years to run concurrently with No. 72-166 (the narcotics case).

dangerous weapon);[4] *Thomas v. State,* 522 P.2d 528 (Alaska 1974) (sale of narcotics). Approximately one year after mandates from this court were filed in the superior court,[5] counsel for appellant moved to modify and correct the sentences which had been imposed for the three narcotics convictions. After hearing, the superior court denied Thomas' motion to correct sentences as well as Thomas' motion for reduction of sentence. This appeal followed.

 Thomas' specifications of error which attack the legality of the narcotics sentences will be addressed first. Thomas challenges the superior court's requirement that he serve a minimum of one-third of each of the two consecutive 10-year sentences, or six and two-thirds years, before he is eligible for parole. At the time the sentencing took place in the case at bar, AS 33.15.230(a)(1)[6] authorized the superior court to fix the offender's eligibility for parole. In part, this statute provided that in fixing the minimum term of imprisonment at the expiration of which the prisoner is eligible for parole such term

4. In regard to the 10-year sentence imposed by the superior court for the crime of assault with a dangerous weapon, we said:

 In *Thomas v. State,* 522 P.2d 528, Opinion No. 1040 (1974), we affirmed appellant's conviction for the sales of heroin . . . . Because the sentence to be served for those offenses is twice as long as the sentence to be served for the assault with a dangerous weapon offense, and because it seems unlikely that his service of the latter sentence will have any appreciable effect upon his parole eligibility, we have concluded that a detailed review of the latter sentence has been rendered superfluous. We affirm the sentence. *Thomas v. State,* 524 P.2d 664, 665 (Alaska 1974).

5. This court's mandate in the narcotics case was issued on May 24, 1974, and filed in the superior court on June 12, 1974. Our mandate in the assault with a dangerous weapon case was issued on July 30, 1974, and filed in the superior court on August 20, 1974.

6. AS 33.15.230(a) (ch. 68, § 10, SLA 1965) provides:

 *Fixing Eligibility for Parole at Time of Sentencing.* (a) Upon entering a judgment of conviction, the court having jurisdiction to impose sentence, when in its opinion the ends of justice and best interests of the public require that the defendant be sentenced to

. . . may be less than, but shall not be more than one-third of the maximum sentence imposed by the court . . . . .

Thomas would have us read "maximum sentence" to mean the maximum given on an individual count, rather than the aggregate of any consecutive sentences imposed by the court on any number of counts. We think Thomas' construction of AS 33.15.230(a)(1) must be rejected.

By authorizing consecutive sentences, AS 11.05.050,[7] in effect, gives the trial court the power to sentence a defendant convicted of multiple crimes to a term of imprisonment longer than the statutory maximum for any one of them. A concomitant of this authority is the power to fix a minimum term of imprisonment for parole eligibility purposes, based on the entire term of imprisonment. We thus conclude that the phrase "maximum sentence imposed," as employed in AS 33.15.230,[8] is intended to authorize the sentencing court to fix eligibility for parole based on the entire length of imprisonment the particular sentence requires.[9]

 imprisonment for a term exceeding one year, may

 (1) designate in the sentence of imprisonment imposed a minimum term at the expiration of which the prisoner is eligible for parole, which term may be less than, but shall not be more than one-third of the maximum sentence imposed by the court; or

 (2) fix the maximum sentence of imprisonment to be served, in which case the court may specify that the prisoner is eligible for parole at the time the board determines.

7. AS 11.05.050 provides:

 *Consecutive sentences.* If the defendant is convicted of two or more crimes, before judgment on either, the judgment may be that the imprisonment upon one conviction begins at the expiration of the imprisonment for any other of the crimes. If the defendant is imprisoned upon a previous judgment on a conviction for a crime, the judgment may be that the imprisonment commences at the expiration of the term limited by the previous judgment.

8. We think it significant that AS 33.15.230(a) does not read "the maximum sanction provided for the commission of the particular crime."

9. The state correctly points out in its brief that the consecutive sentencing statute, AS 11.05.-

We think this construction consistent with the portion of AS 33.15.080, added in 1974, in which it is provided:

no prisoner may be released on parole *who has not served at least one-third of the period of confinement to which he has been sentenced,* or in the case of a life sentence, has not served at least 15 years. (emphasis added) [10]

■ Thomas next specified as error the superior court's imposition of two consecutive 10-year terms "for sales to the same informer." Appellant contends that the consecutive sentences were illegal since they violated "constitutional prohibitions against cruel and unusual punishment and double jeopardy" and are contrary to this court's opinion in *State v. Pete,* 420 P.2d 338 (Alaska 1966).

In *Mutschler v. State,* 560 P.2d 377 (Alaska 1977), appellant asserted that the superior court erred in ordering two terms of incarceration to run consecutively instead of concurrently.[11] Counsel for Mutschler contended that the two stabbings should be considered as one general transaction and a single criminal episode. In advancing this contention, Mutschler placed primary reliance upon *State v. Pete,* 420 P.2d 338 (Alaska 1966). In rejecting Mutschler's arguments, we said, in part, that "*Pete* cannot be read as holding that consecutive sentences are impermissible in the circumstance where the separate offenses are part of one general occurrence or transaction." [12] In *Mutschler,* we also found appellant's reliance on *Faulkner v. State,* 445 P.2d 815 (Alaska 1968), inapposite, concluding that "[t]he case affords little precedential value and certainly is not a basis for overruling the sentence imposed here. None of the three separate opinions [in *Faulkner*] concludes that consecutive sentences were inappropriate in that case." [13] In ruling in *Mutschler* that consecutive sentences were appropriate, we further observed that *Davenport v. State,* 543 P.2d 1204, 1210 (Alaska 1975),

establishes that consecutive sentences may be imposed when separate offenses with separate intents are committed during a brief time interval in the course of one general transaction.[14]

■ Thomas received consecutive sentences for narcotic sales which were made to two different individuals, although appellant claims that one of them set up both sales, approximately two months apart. In light of these circumstances and our recent opinion in *Mutschler,* we conclude that appellant's reliance on *Pete* is not persuasive and conclude that *Pete* does not preclude the imposition of consecutive sentences in the case at bar.[15] Without the gloss of

---

050, was enacted in 1949, and antedates the enactment of AS 33.15.230 by several years. We have not been referred to any legislative history which would indicate that the legislature did not intend the parole eligibility statute (AS 33.15.230) to apply to consecutive sentences.

10. Adoption of appellant's interpretation of AS 33.15.230 would result in an inconsistency between AS 33.15.080 and AS 33.15.230.

The full text of AS 33.15.080 is as follows: *Granting of parole.* If it appears to the board from a review that a prisoner eligible for parole will, in reasonable probability, live and remain at liberty without violating the laws, or without violating the conditions imposed by the board, and if the board determines that his release on parole is not incompatible with the welfare of society, the board may authorize the release of the prisoner on parole. However, no prisoner may be released on parole who has not served at least one-third of the period of confinement to

which he has been *sentenced, or in the case of a life sentence,* has not served at least 15 years.

11. Appellant was found guilty of two counts of assault with a dangerous weapon, a violation of AS 11.15.220. The offenses involved cutting one person on the leg and another in the back with a knife during a brief fight.

12. *Mutschler v. State,* 560 P.2d 377, 378 (Alaska 1977).

13. 560 P.2d at 379.

14. 560 P.2d at 379. *Davenport* expressly upheld the imposition of two consecutive 10-year sentences for robbery of two individuals during the same transaction.

15. Compare *Cleary v. State,* 548 P.2d 952 (Alaska 1976) *and Lanier v. State,* 486 P.2d 981 (Alaska 1971) (approving consecutive sen-

*Pete,* AS 11.05.050 authorizes consecutive sentences whenever the defendant is convicted of multiple offenses. AS 11.05.050 does not contain limitations on the court's power to impose consecutive sentences.[16]

■ As noted previously, Thomas has also advanced the contention that the imposition of consecutive sentences for one spree of criminal activity constitutes cruel and unusual punishment and places him in double jeopardy, all in violation of the Alaska Constitution. In *Davenport v. State,* 543 P.2d 1204 (Alaska 1975), the defendant took property from two different people during an armed robbery. Convicted of two counts of armed robbery and sentenced to consecutive prison terms, Davenport claimed he was the victim of double jeopardy. We rejected Davenport's argument, stating, "The contention that consecutive sentences constitute double jeopardy has no support in case law." [17] We think *Davenport* is dispositive of Thomas' double jeopardy claims. We must emphasize that the record shows that Thomas was convicted of separate drug sales which were consummated approximately two months apart and were made to different individuals on the two occasions. Thus, we conclude that Thomas' double jeopardy assertion of error is without merit.

■ In *Green v. State,* 390 P.2d 433, 435 (Alaska 1964), this court articulated the following test for determining whether a particular punishment constitutes cruel and unusual punishment:

> Only those punishments which are cruel and unusual in the sense that they are inhuman or barbarous, or so disproportionate to the offense committed as to be completely arbitrary and shocking to the sense of justice may be stricken as violating the due process [and cruel and unusual punishment] clauses . . . .[18] (footnotes omitted)

Under *Green* and the record in the instant case, we can find no basis for holding that the imposition of consecutive sentences for Thomas' narcotics convictions constituted cruel and unusual punishment.

■ Thomas also specifies as error the superior court's refusal to resentence him pursuant to *Speas v. State,* 511 P.2d 130 (Alaska 1973). In appellant's view, the superior court's refusal constituted an abuse of discretion. In *Speas,* we held that although the appellant had been convicted under AS 17.10.200,[19] which provided that

---

tences), *with State v. Pete,* 420 P.2d 338 (Alaska 1966).

**16.** For the text of AS 11.05.050 see note 7, *supra.*

**17.** 543 P.2d at 1208. Although *Whitton v. State,* 479 P.2d 302 (Alaska 1970), dealt with a different aspect of double jeopardy than that presented in the case at bar, it contains this court's most detailed exposition of the double jeopardy clause. In *Whitton,* we addressed the question of the application of more than one criminal statute to the same conduct. There we laid down the rule that the sentencing court was to examine the differences between the societal interests sought to be vindicated or protected by each of the statutes. Only if those differences were substantial could multiple punishment be imposed. *Whitton v. State,* 479 P.2d 302, 312 (Alaska 1970).

**18.** In *Green,* this court rejected a cruel and unusual punishment challenge to a sentence of 15 years for second degree murder. In *Faulkner v. State,* 445 P.2d 815 (Alaska 1968), two of the three justices participating rejected the principle that the length of a prison sentence

authorized by statute could in and of itself violate the clause.

> *Compare In re Lynch,* 8 Cal.3d 410, 105 Cal. Rptr. 217, 503 P.2d 921 (Cal.1972) *and In re Foss,* 10 Cal.3d 910, 112 Cal.Rptr. 649, 519 P.2d 1073 (Cal.1974), where the California Supreme Court held the statutory maximum life sentence for a second offense of indecent exposure and a mandatory minimum of 10 years for sale of heroin by a defendant with prior related narcotics convictions without possibility for parole were violative of the cruel and unusual punishment clause of California's constitution.

**19.** AS 17.10.200(a) provides in relevant part:

> A person who violates any provision of this chapter except a provision relating to the keeping of records, upon conviction, is punishable by a fine of not more than $5,000 and by imprisonment for not less than two nor more than 10 years.

AS 17.10.200(d) provides:

> The imposition or execution of sentence shall not be suspended and probation or parole shall not be granted until the minimum imprisonment provided in this section for this offense is served.

as to certain drug offenses the imposition of sentence shall not be suspended, the sentencing court was not required to impose the minimum two-year sentence but was empowered to suspend any portion of the minimum term under the authority of AS 12.55.080 and AS 12.55.085(a). The basis of this specification of error is that the superior court mistakenly thought it was required to fix eligibility for parole in accordance with the two-year minimum found in AS 17.10.200(d).

Our review of the record has led us to conclude that the superior court's sentence does not reflect any misunderstanding of AS 17.10.200(d). When this point was argued before the superior court, Thomas was informed by the court that at the time of sentencing it did not consider the two year minimum provided in AS 17.10.200, since it fixed Thomas' term of imprisonment and eligibility for parole, pursuant to AS 33.15.-230(a)(1), beyond the minimums prescribed in AS 17.10.200(a) and (d) for imprisonment and parole eligibility for narcotics offenses.

■■■■■ We now reach the most interesting and perhaps significant issue presented in this appeal. Thomas contends that the superior court abused its discretion in refusing to resentence him and to hear evidence relevant to resentencing pursuant to Criminal Rule 35(a).[20] Thomas further contends that the superior court abused its discretion in failing to relax the 60-day time limitation of Criminal Rule 35(a) under the authority of Criminal Rule 53.[21] The state counters by arguing that no error was committed by the superior court's refusal to

modify Thomas' sentence, since Criminal Rule 35(a) "is unconstitutional insofar as it purports to authorize a court to reduce a legal sentence." The state further argues that no error can be found since Thomas' motion for reduction of sentence was untimely and Criminal Rule 53 inapplicable.

The state fashions its constitutional attack on Criminal Rule 35(a) in the following manner. *Davenport v. State*, 543 P.2d 1204, 1210–11 (Alaska 1975), is read as indicating that "a trial court's power to reduce sentence is a jurisdictional matter." The state then notes that article IV, section 1 of the Alaska Constitution provides that "[t]he jurisdiction of courts shall be prescribed by law", and that article XII, section 11 indicates that "by law" is equivalent to "by the legislature." The state takes the further position that the legislature has given the trial courts

> a limited power to review sentences pursuant to AS 12.55.080 for a period of 60 days from the date of entry of a judgment. However, under AS 12.55.080, a court may only suspend the imposition or execution or balance of a sentence, or a portion thereof, and place the defendant on probation. The court does not have the power to reduce a sentence under AS 12.55.080.[22]

From the foregoing, the state concludes that a provision giving a trial court the jurisdiction to review a sentence within a specified period of time after imposition is a substantive matter, not a procedural matter.

**20.** Criminal Rule 35(a) provides:
 The court may correct an illegal sentence at any time. The court may reduce a sentence within 60 days after the sentence is imposed, or within 60 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 60 days after receipt of an order of the supreme court of the state or of the United States denying an application for relief.

**21.** Criminal Rule 53 provides:
 These rules are designed to facilitate business and advance justice. They may be relaxed or dispensed with by the court in any case where it shall be manifest to the court

that a strict adherence to them will work injustice.

**22.** AS 12.55.080 provides:
 Upon entering a judgment of conviction of a crime, or at any time within 60 days from the date of entry of that judgment of conviction, a court, when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution or balance of the sentence or a portion thereof, and place the defendant on probation for a period and upon the terms and conditions as the court considers best.

Admittedly, the distinction between substance and procedure is of importance because article IV, section 15 of the Alaska Constitution vests the power to make and promulgate rules governing practice and procedure in the Supreme Court of Alaska.[23] While the power to create substantive rights is a legislative power, the authority to enact procedures to implement those rights is, by virtue of article IV, section 15, judicial.[24] Yet, we think the state's argument overlooks the fact that article IV, section 1 of Alaska's Constitution provides that "[t]he judicial power of the State is vested in a supreme court, a superior court, and the courts established by the legislature." Analysis of the relevant case law reveals that the power to reduce a sentence is an inherent judicial power of the sentencing court and is one aspect of the control which the court retains over a judgment it has entered.

In *United States v. Benz,* 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931), one of the issues presented concerned whether a sentencing court had power to alter a valid sentence after its entry. The Supreme Court stated:

The general rule is that judgments, decrees and orders are within the control of the court during the term at which they were made. They are then deemed to be 'in the breast of the court' making them, and subject to be amended, modified, or vacated by that court. *Goddard v. Ordway,* 101 U.S. 745, 752, 25 L.Ed. 1040, 1043. The rule is not confined to civil cases, but applies in criminal cases as well, provided the punishment be not augmented. *Ex parte Lange,* 18 Wall. 163, 167–74, 21 L.Ed. 872, 876–78; *Bassett v. United States,* 9 Wall. 38, 19 L.Ed. 548. In the present case the power of the court was exercised to mitigate the pun-

ishment, not to increase it, and is thus brought within the limitation.[25]

The Supreme Court in *Benz* further observed, in quoting from *In re Graves,* 117 F. 789 (E.D.Wis.1902):

[The issue] involves only the inquiry whether the court possessed the power to recall the prisoner, set aside the sentence, and impose another modified sentence during the same term, notwithstanding the fact alleged that execution of the former sentence had commenced; and, whatever diversity of opinion appears in other jurisdictions, the doctrine is established in the federal courts that such power exists, and that it is applicable as well where the original sentence was in excess of jurisdiction. [Citing among other cases, *Ex parte Lange,* 18 Wall. 163, 21 L.Ed. 872, and *Bassett v. United States,* 9 Wall. 38, 19 L.Ed. 548, *supra.*] In *Ex parte Lange, supra,* the doctrine so stated is distinctly recognized . . . .[26]

The Supreme Court concluded its opinion in *Benz* by stating:

To reduce a sentence by amendment alters the terms of the judgment itself and is a judicial act as much as the imposition of the sentence in the first instance.[27]

We also think *United States v. Ellenbogen,* 390 F.2d 537 (2d Cir. 1968), is relevant. There the Second Circuit distinguished the inherent authority of a sentencing court to reduce a sentence from the statutory authority of the court to suspend the execution or imposition or balance of a sentence, the latter of which is not inherent in the sentencing court. In *Ellenbogen* the Second Circuit said:

The confusion arises from a failure to distinguish between the power to correct or reduce a sentence, on the one hand,

**23.** Article IV, section 15 reads:

The supreme court shall make and promulgate rules governing the administration of all courts. It shall make and promulgate rules governing practice and procedure in civil and criminal cases in all courts. These rules may be changed by the legislature by two-thirds vote of the members elected to each house.

**24.** *Channel Flying, Inc. v. Bernhardt,* 451 P.2d 570 (Alaska 1969).

**25.** *United States v. Benz,* 282 U.S. 304, 306–07, 51 S.Ct. 113, 114, 75 L.Ed. 354, 356 (1931).

**26.** *Id.* at 310, 51 S.Ct. at 115, 75 L.Ed. at 358.

**27.** *Id.* at 311, 51 S.Ct. at 115, 75 L.Ed. at 358.

and the power to suspend the execution of a sentence and to order probation, on the other. The power to reduce is an inherent power of the court and is one aspect of the control which a court retains over a judgment which it has entered. [Citing *United States v. Benz*] Originally that power was held to expire at the end of the term of court at which the sentence was imposed. But since the adoption of the Federal Rules of Criminal Procedure in 1946, and the abrogation of any effect of the expiration of term of court, see Rule 45(c), the provisions of Rule 35 have governed the expiration of power to reduce sentences in the federal system. . . .

But a federal court has no inherent power to suspend the execution of a sentence which it has imposed or to place the defendant on probation.[28] (citations omitted)

On the authority of article IV, section 1 of the Alaska Constitution and the *Benz* and *Ellenbogen* cases, we hold that the constitutional grant of judicial power encompasses the inherent judicial power of Alaska's trial courts to reduce or modify their own sentences.[29] Thus, we reject the state's contention that Criminal Rule 35(a) is unconstitutional.

▆▆▆▆ The state alternatively argues that Thomas' motion to reduce or modify the sentences in question was untimely under the constraints of Criminal Rule 35(a), and that Criminal Rule 53 is not available to waive or relax the time prerequisite of Criminal Rule 35(a).[30]

In *Jones v. State,* 548 P.2d 958 (Alaska 1976), appellant made a motion in the superior court for an extension of time within which to file a motion for modification or reduction of his sentence. The motion was denied under Criminal Rule 35(a) as being untimely. In *Jones* we alluded to the fact that in *Davenport v. State,* 543 P.2d 1204, 1211 (1975), we had said:

[T]he superior court lacks jurisdiction to review its own sentence, after it has entered a judgment on the matter, more than 60 days after it has imposed sentence.

Then, in our opinion in *Jones,* we distinguished *Davenport* in the following manner:

AS 12.55.080 only provides a 60-day limit for suspending the imposition, execution or balance of a sentence, or for placing the defendant on probation. *See* Rule 35(a). This does not mean, however, that in a clear case of injustice we would be unable to act. Rule 35(a) would be subject to Alaska R.Crim.P. 53, which allows relaxation of the rules if injustice will result.[31]

Despite the foregoing, the state argues that *Jones* is not dispositive of the question whether Rule 53 can be employed to relax or dispense with the time limitations of Rule 35(a). The state takes the position that the prohibitions on enlargement of time for a Rule 35(a) motion contained in Criminal Rule 40(b)[32] supersede the provi-

---

**28.** *United States v. Ellenbogen,* 390 F.2d 537, 540–41 (2d Cir. 1968).

**29.** *See Gobles v. Hayes,* 194 Ga. 297, 21 S.E.2d 624 (1942); *Bax v. Fletcher,* 261 S.W.2d 662 (Ky.1953); *Commonwealth v. Kazee,* 252 S.W.2d 20 (Ky.1952); *Madison v. State,* 205 Md. 425, 109 A.2d 96 (1954); *State ex rel. Czaplinski v. Warden,* 196 Md. 654, 75 A.2d 766 (1950); *District Attorney v. Superior Court,* 342 Mass. 119, 172 N.E.2d 245 (1961); *State ex rel. Williams v. Riffe,* 127 W.Va. 573, 34 S.E.2d 21 (1945); *Hayes v. State,* 46 Wis.2d 93, 175 N.W.2d 625 (1970).

**30.** See notes 20 and 21 for the texts of Criminal Rules 35(a) and 53.

**31.** *Jones v. State,* 548 P.2d 958, 959 (Alaska 1976). In *Jones,* we concluded that the record did not present a proper case in which to relax or waive the time requirement of Criminal Rule 35(a) under Criminal Rule 53.

**32.** Criminal Rule 40(b) reads in part as follows:

When an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion:

(2) Upon motion permit the act to be done after the expiration of the specified period if the failure to act was the result of excusable neglect; but the court may not enlarge the period for taking any action un-

sions of Criminal Rule 53, since Criminal Rule 53 is a general provision and Criminal Rule 40(b) refers specifically to Rule 35 as to any possible exceptions to the prohibition on enlargement of time under Rule 35(a).[33]

We will not depart from *Jones* and, thus, take this occasion to reiterate our holding that Criminal Rule 53 is applicable to Rule 35(a) motions. More specifically, we hold that where a showing of injustice has been made under Rule 53, the 60-day time limitation contained in Rule 35(a) for bringing a motion to reduce a sentence may be dispensed with or relaxed. Rule 53 is intended to apply to any of Alaska's Criminal Rules in order to insure that strict adherence to one or more of our Criminal Rules of Procedure will not result in manifest injustice to any party.[34]

This brings us to the final issue in this appeal, namely, whether the superior court abused its discretion in failing to relax the 60-day time limit on motions to reduce sentences found in Criminal Rule 35(a). It would not be useful to detail the protracted history of this litigation. Rather we deem

it sufficient to note that we have carefully examined the factual and procedural record in the case and have concluded that on the showing made to the superior court, it did not abuse its discretion in failing to relax the 60-day time limitation of Criminal Rule 35(a). What is lacking in the record presented to the superior court is any proof that Thomas intended to timely ask for a reduction of his narcotics sentences or that he was in any way frustrated in his efforts to obtain a timely reduction of his sentences through the neglect or failure of his counsel to take appropriate procedural measures to gain such relief.[35] Thus, we conclude that the superior court's refusal to relax the requirements of Criminal Rule 35(a) should be affirmed.

Affirmed.

---

der Rules 33, 34 and 35 except as otherwise provided in those rules, or the period for taking an appeal.

**33.** The state further argues:

Rule 40(b) does not add a provision that permits an exception under Rule 53. Rule 35(a), of course, contains no exception for the sixty-day requirement for filing a motion for reduction. Since Rule 40(b) and Rule 53 are in conflict, the more specific provision should prevail. 2A Sutherland, *Statutes and Statutory Construction* § 51.05 at 315 (4th ed. 1973). Rule 53 is therefore inapplicable to late filings of motions for reduction under Rule 35(a).

One difficulty with this argument is that Rule 35(b) provides for extensions of time when the failure to act is the result of "excusable neglect." Rule 53 provides for a waiver of rule under a different standard, to prevent injustice. Thus, the same considerations are not present in considering a Rule 53 motion.

**34.** Two additional facets of Criminal Rule 35(a) should be mentioned. Counsel for Thomas urges that this court expand the applicable time limitation from 60 days to 120 days in which to reduce sentence as has been done in Federal Rule 35(a). We think there is considerable merit in counsel's suggestions and have forwarded this proposal for rule change to our Standing Advisory Committee on Criminal Rules.

Counsel for Thomas has also pointed out that there is dictum in our opinion in *Jones v. State,* 548 P.2d 958, 960 n. 5 (Alaska 1976), to the effect that the criteria for sentence modification under Rule 35(a) are those matters governing post-conviction relief listed under subparagraph (b) of Rule 35. We agree that *Jones* does contain overbroad language in this respect. Rule 35(a) presupposes a valid sentence and conviction. A motion under Rule 35(a) is essentially a plea to the sentencing court for leniency; it is not necessary to present any new facts in mitigation of the sentence. *See* 2 C. Wright, Federal Practice and Procedure: Criminal § 586 (1969); *United States v. Ellenbogen,* 390 F.2d 537, 543 (2d Cir. 1968). In contrast, Rule 35(b) motions for post-conviction relief are bottomed on asserted invalidity of the conviction or sentence. Thus, we disapprove of any intimation in *Jones* that motions to reduce a sentence under Rule 35(a) are limited to the grounds set forth in Rule 35(b).

**35.** Our affirmance is without prejudice to Thomas' seeking relief under *Jones v. State,* 548 P.2d 958 (Alaska 1976), and Criminal Rule 53, upon a proper showing of manifest injustice, to relax the 60-day time requirement of Criminal Rule 35(a).