Norman S. STONE, Jr., Appellant,

v.

Marguerite R. STONE, Appellee.

No. 5674.

Supreme Court of Alaska.

July 2, 1982.

Ronald D. Flansburg, Charles E. Tulin, Anchorage, for appellant.

William D. Artus, Artus & Choquette, Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

COMPTON, Justice.

Norman and Marguerite Stone were divorced on April 12, 1979. A property settlement incorporated into the divorce decree awarded Norman ownership of a condominium in Hawaii and awarded Marguerite $22,500 in cash to be paid from the proceeds of the sale of the condominium, which, the property settlement recited, the husband had agreed to sell for $125,000.

The condominium sale did not close as scheduled on July 30, 1979. On August 9, after payment on the condominium still had not been received, Norman attempted to cancel the sales agreement. The purchasers filed a suit for specific performance on August 16, 1979.

On October 2, 1979, Marguerite filed suit in the Circuit Court of Hawaii. In her complaint she sought to recover one-half the proceeds from the sale of the condominium, and, in addition, amounts owed on an unrelated promissory note. Marguerite incurred $3,284 in legal fees in that lawsuit.

In February 1980, the specific performance litigation between Norman and the purchasers was settled. Pursuant to this agreement, Norman sold the condominium in March 1980 for a price of $140,000. In July 1980, Marguerite filed a motion in the superior court in Anchorage to modify the divorce decree to award her one-half the difference between the actual sales price and that contemplated in the divorce decree, and to recover her Hawaiian litigation legal fees.

The superior court rejected Marguerite's attempt to characterize her action as a modification proceeding. The court questioned whether the matter isn't "really a petition to reform the agreement?" The court then observed that "the property settlement agreement is a contract, and the rights of the parties under that agreement arise under the law of contract . . . ." The court viewed Marguerite's motion as an attempt to show either fraud by Norman (lack of intent to sell at the time of the agreement) or breach of contract (by frustration of the sale). Alternatively, the action was seen as alleging a mutual mistake about the value of the property, warranting reformation of the agreement.

The superior court determined that the decree obligated Norman to pay $22,500 to Marguerite on or before July 30, 1979, the date on which the parties anticipated the sale of the condominium. She was not entitled to share in the appreciated value of the condominium. The court awarded Marguerite interest on the amount due since Norman did not tender the $22,500 until March 1980. In addition, the court awarded Marguerite attorneys fees for both the Alaska and Hawaiian litigation. Norman Stone appeals, alleging that it was error for the court to award either interest or attorneys fees.

## I. MODIFICATION OF THE DECREE

We first discuss subject matter jurisdiction. Marguerite initiated suits in Hawaii and Alaska principally in order to share equally in the appreciation of the condominium. We first address whether the superior court had jurisdiction to consider Marguerite's proposed modification to the property settlement agreement incorporated into the divorce decree. Neither the parties nor the superior court addressed this issue.[1] We are cognizant that this issue need not be resolved to reach the limited issues presented on appeal. Yet, the confusion apparent by the posture of this case suggests to us the need to reiterate the rules governing attempts to modify or reform a property settlement which is incorporated into a divorce decree.

A property settlement incorporated into a divorce decree is merged into the decree, so that the rights of the parties derive from the decree, not the agreement. *Helber v. Frazella*, 118 Ariz. 217, 575 P.2d 1243, 1244 (1978) (en banc); *Compton v. Compton*, 101 Idaho 328, 612 P.2d 1175, 1180

---

1. Subject matter jurisdiction, however, may be raised at any stage of the litigation and if noticed must be raised by the court if not raised by the parties. *O'Link v. O'Link*, 632 P.2d 225, 226 n.2 (Alaska 1981). *See* Civil Rule 12(h)(3).

(1980); *see O'Link v. O'Link*, 632 P.2d 225, 228 (Alaska 1981). Principles of contract law are not applicable in an attempt to obtain relief from a final judgment—here, the terms of a property settlement incorporated into a divorce decree. In addition, the statutory provisions for divorce do not, in contrast to the treatment of support or custody orders,[2] authorize a court to modify the terms of a property settlement. AS 09.55.220;[3] *see Allen v. Allen*, 645 P.2d 774, (Alaska, 1982). AS 09.55.205.

■ In the present case, were Marguerite entitled to any relief, she should have sought relief from judgment pursuant to the terms of Civil Rule 60(b).[4] We con-

clude, though, that on the facts of the present case, Marguerite demonstrated no basis for the superior court to afford relief from the final judgment.[5]

Marguerite is barred from seeking relief under Rule 60(b)(1)–(3) because her motion to modify the decree was made on July 21, 1980, fifteen months after the divorce decree was entered. The rule expressly provides that motions pursuant to (b)(1)–(3) must be filed within one year of the judgment. Civil Rule 6(b) prohibits a court from enlarging the time constraints imposed by Rule 60(b).[6]

■ Marguerite is also barred from seeking relief under Rule 60(b)(6). That

2. AS 09.55.205.

3. AS 09.55.220 provides:
 Any time after judgment, the court, upon the motion of either party, may set aside, alter, or modify so much of the judgment as may provide for alimony, or for the appointment of trustees for the care and custody of the minor children, or for their nurture and education, or for the maintenance of either party to the action.

4. Civil Rule 60(b) provides in pertinent part:
 On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
 (1) mistake, inadvertence, surprise or excusable neglect;
 (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
 (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
 (4) the judgment is void;
 (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
 (6) any other reason justifying relief from the operation of the judgment.
 The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant relief to a defendant

not personally served, or set aside a judgment for fraud upon the court.

5. One purpose of Rule 60(b)(1)–(6) is to merge and consolidate the old equitable forms for obtaining relief from a judgment. The rule expressly abolishes the equitable bills of *coram nobis, coram vobis*, and *audita querela*. In *Thomas v. Thomas*, 581 P.2d 678, 679 n.4 (Alaska 1978), we said that divorce is an equitable decree and may be modified to the same extent as any other equitable decree. *Thomas* was not intended to confer any greater right to relief from a divorce than is otherwise available. Absent any independent statutory authority, a divorce decree is modifiable only to the extent that relief may be obtained from any other final judgment. *Allen v. Allen*, 645 P.2d 774, (Alaska, 1982). This is especially true now that a divorce decree has become regarded as a blend of law and equity. H. Clark, Jr., Law of Domestic Relations § 13.1 at 379 (1968).

6. Rule 6(b) provides:
 When by these rules or by a notice given thereunder or by order of the court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; but it may not extend the time for taking any action under Rules 25, 50(b), 52(b), 59(b), and (d) and (e), and 60(b), except and under the conditions stated in them.

clause allows relief from a judgment for "any other reason justifying relief from the operation of the judgment." A motion for relief pursuant to (b)(6) is not subject to the one year limitation applicable to motions pursuant to (b)(1)–(3); rather a (b)(6) motion must be filed within a "reasonable time." The relief available under Rule 60(b)(6), however, is exclusive of the other remedies offered by Rule 60(b)(1)–(5). *O'Link v. O'Link*, 632 P.2d at 229; *see Ackerman v. United States*, 340 U.S. 193, 197, 71 S.Ct. 209, 211, 95 L.Ed. 207, 210 (1950). Marguerite, in essence, alleged fraud, misrepresentation or other misconduct by Norman. Her motion to seek relief would thus be within the ambit of (b)(3). Indeed, the superior court viewed the motion as an attempt by Marguerite to show Norman's lack of intent to sell at the time of the agreement, i.e., a fraud or misrepresentation. Since the motion could have been brought under (b)(3), Marguerite is barred from seeking relief under (b)(6).

 We conclude, therefore, that the superior court lacked jurisdiction to grant relief from the original decree.[7]

7. Marguerite could not obtain relief under the express saving clause of Rule 60(b), reserving to the court the power to entertain an independent action to relieve a party from a judgment or to set aside a judgment for a fraud upon the court. The term "fraud upon the court" contemplates conduct so egregious that it undermines the integrity of the judicial process. *O'Link v. O'Link*, 632 P.2d at 230; *Allen v. Bussell*, 558 P.2d 496, 500 (Alaska 1976). Marguerite has made no showing of fraud upon the court itself. Similarly, the "independent action" to obtain relief from judgment is a most unusual remedy, historically available only where there was extrinsic, as opposed to intrinsic, fraud. 11 C. Wright & A. Miller, Federal Practice and Procedure § 2870, at 240 (1973); 7 J. Moore & J. Lucas, Moore's Federal Practice § 60.37[1] (1979); *see Compton v. Compton*, 612 P.2d 1175 (Idaho 1980). We need not address the parameters of such an independent action, since it is apparent that the fraud alleged in the instant case involved matters which with reasonable diligence Marguerite could have anticipated in the original proceeding.

8. Because the court's award was in the nature of compensatory damages, we need not decide whether AS 09.60.010 is authority for the

## II. HAWAIIAN LEGAL EXPENSES

 The superior court awarded Marguerite her legal expenses incurred in connection with the suit in Hawaii.[8] Marguerite argues that she had to sue Norman because she could not file a lis pendens unless a lawsuit was pending in a Hawaiian court. A lis pendens was required, she argues, in order to protect her interest in the proceeds of the condominium sale.

Marguerite's lawsuit in Hawaii, however, was not undertaken as an attempt to safeguard her rights under the property settlement, but instead as an attempt to expand them. The principal goal of the Hawaiian litigation was to share in the appreciation of the condominium and to recover an unrelated debt.[9] At no point did Marguerite claim that Norman balked at payment of the $22,500 *when* the sale of the condominium closed. Any finding of fact entered by the trial court to the contrary finds no support in the record and is thus clearly erroneous.[10] We conclude, therefore, that Marguerite was not entitled to recover her Hawaiian legal expenses. That portion of the judgment must be reversed.

award of attorney's fees resulting from litigation in another jurisdiction.

9. Marguerite's counsel claimed before Judge Lewis that the cause of action in Hawaii was "to obtain half of the excess sale proceeds, basically the same as we are trying to do here."

10. The dissent casts in questionable light our application of the clearly erroneous test by interpreting a brief portion of Marguerite's testimony as support for the finding that one of the purposes of the Hawaiian litigation was to protect Marguerite's interest in obtaining $22,-500.00 from the sale proceeds. *Post* at 588 n.1. With all due respect, the testimony quoted by the dissent does not, if read in proper context, contradict the majority position. Preceding the quoted segment, her counsel asked a series of questions to establish when Marguerite realized that the condominium would be sold for an amount in excess of $125,000.00. When Marguerite agreed that she "paid certain sums to an attorney in Hawaii to protect [her] rights to *these monies*," the antecedent of "these monies" is the excess amounts, not the $125,000.00. This point is illustrated by the following exchange, which occurred several questions prior to the portion of Marguerite's testimony quoted by the dissent:

## III. INTEREST

Norman submits that it was improper for the court to award Marguerite interest because the stipulation entered with respect to the Hawaii litigation evinces, at least implicitly, a waiver of interest. We need not address this claim. Instead, we conclude that the court erred in interpreting the decree to require payment of the $22,500 on or before July 30. The property settlement agreement, incorporated into the decree, stated only that Marguerite would be paid $22,500 from proceeds of the sale upon closing.[11] The parties never submitted that the obligations created by the property settlement agreement were ambiguous. Rather, the superior court independently raised the question of interest. In this context, we conclude that an interpretation of the property settlement agreement was not in issue and, as a consequence, the award of interest was erroneous.[12]

## IV. ATTORNEY'S FEES

The final matter is the award of attorney's fees.[13] Our disposition of the issues presented on appeal clearly establish that Norman is the prevailing party. The award of fees to Marguerite is therefore vacated, and the case is remanded to afford Norman an opportunity to seek an award of attorney's fees pursuant to Civil Rule 82.

REVERSED and REMANDED.

MATTHEWS, J., dissents.

MATTHEWS, Justice, dissenting.

I would affirm the judgment of the superior court in all respects.

### I

A. The parties' property settlement agreement entered into on April 10, 1979 clearly contemplated that Norman Stone would carry through on the existing agreement under which he was to sell the Hawaii condominium for $125,000.00 with a closing date of July 30, 1980. The trial court found that Norman breached his obligation to timely close the sale of the condominium. The court imposed as a remedy for this breach an obligation to pay interest on the sale proceeds due Marguerite, from the date they should have been paid until they actu-

Q. What did you also learn about what the defendant was asking for in terms of a higher sales price or a different sale price?
A. Yes, I knew he was asking for 140 at that point.
Q. 140 or 150, or do you remember?
A. Maybe it was 150 to start with, I can't really remember.
Q. But you know that it was later sold for $140,000, in any event?
A. That's right.
Q. Did you take some steps at that time, Mrs. Stone, to protect your interest, or what you felt you had coming out of any excess sales proceeds?
A. Yes, I did; I filed a suit in Hawaii.

11. The property settlement agreement provided in pertinent part:
 "2. *Personal Property.* The personal property of the parties, and cash disbursements, shall be divided and made as follows:
 a. Husband shall pay or cause to be paid to the Wife, the sum of Twenty-two Thousand Five Hundred Dollars ($22,500.00), from the proceeds realized from the sale of Apartment B–230, Casa De Emdeko, Kailua-Kona, Hawaii. Husband has entered into an agreement to sell said condominium for the sum of One Hundred Twenty-five Thousand Dollars ($125,000.00). Documents shall be executed by the Husband directing the escrow or closing agent to pay the said sum of Twenty-two Thousand Five Hundred Dollars ($22,500.00) to the Wife from the proceeds realized at closing. The balance of the proceeds from the sale of the condominium shall be retained by the Husband as his sole and separate property."

12. We do not address whether a court has jurisdiction to interpret the terms of a property settlement agreement incorporated into a divorce decree. *Compare Glassford v. Glassford,* 76 Ariz. 220, 262 P.2d 382, 386 (1953) *and Mills v. Mills,* 512 P.2d 143, 146 (Okl.1973) *and Crofts v. Crofts,* 445 P.2d 701, 702 (Utah 1978) *with Kelso v. Kelso,* 124 F.Supp. 294 (W.D.Okl. 1954), *rev'd on other grounds,* 225 F.2d 918 (10th Cir. 1955), *modified,* 246 F.2d 421 (1957). We note that the parties offer no discussion in their briefs as to whether a court has jurisdiction to interpret the terms of a divorce decree.

13. In a proceeding to modify the terms of a property settlement incorporated into a divorce decree, the award of attorney's fees and costs is properly made pursuant to Civil Rule 82. *O'Link v. O'Link,* 632 P.2d at 231 n.15.

ally were paid. This remedy seems to me to be entirely appropriate and practical.

The majority opinion, however, takes the position that Norman did not have the obligation to carry through on the sale at any particular time. Apparently the majority is of the view that Norman could delay the sale for as long as he wanted. By so doing he could also delay indefinitely his obligation to pay Marguerite the sum she was entitled to while benefitting by the appreciation in value of the unit and by living in it. In my view that is an obviously unreasonable reading of the parties' agreement.

B. The trial court found that one consequence of Norman's breach of his obligation to conclude the sale of the Hawaiian condominium on time was the initiation of a lawsuit in Hawaii by Marguerite in order to protect her interest in the sale proceeds. The trial court therefore awarded to Marguerite as damages caused by Norman's breach the sum of $3,284.20 representing the attorney's fees incurred by Marguerite in Hawaii. The majority opinion concludes that the trial court's finding in this regard "finds no support in the record and is thus clearly erroneous." That, however, is not an accurate characterization of the record for Marguerite directly testified that one of the purposes for which she paid her Hawaiian attorney was to protect her rights to the sale proceeds.[1]

C. In awarding damages an effort should be made to put the injured party in as good a position as he or she would have been in had the contract been fully performed. *Green v. Koslosky*, 384 P.2d 951, 952 (Alaska 1963). If Norman had performed as agreed the sale of the condominium would have taken place as scheduled on July 30, 1979. Marguerite would have had her $22,500.00 at that time and would not have initiated a separate lawsuit in Hawaii and incurred attorney's fees therein. The judgment of the superior court awarding Marguerite interest on the $22,500.00 and damages for the attorney's fees she incurred in Hawaii does no more than place her as closely as can be done in the position that she would have been in had Norman performed his obligation.

II

Since under the disposition made by the superior court, with which I agree, Marguerite received an affirmative recovery of $4,408.04, there is no basis for concluding that the court erred in awarding her attorney's fees pursuant to the schedule set forth in Civil Rule 82 on this sum.

III

Nothing in Civil Rule 60(b) precludes the result reached by the superior court. Appellant has not argued that the court violated that rule and the majority opinion has acknowledged "that this issue need not be resolved to reach the limited issues presented on appeal."

Parties often have their contracts entered as consent judgments. A consent judgment is

"one based on the consent or compromise agreement between the parties. A compromise or a consent judgment is a bilateral contract wherein the parties adjust their differences by mutual consent...."

*Continental Insurance Company v. Bayless & Roberts, Inc.*, 608 P.2d 281, 295 (Alaska 1980) *quoting* from *Parkerson v. R–5 Inc.*, 305 So.2d 592, 595 (La.App.1974).[2] While

1. Marguerite was asked and answered the following questions:

Q. Prior to the June 30 deadline passing, you had no indication from anyone that the condominium wasn't going to sell at the $125,000.00....
A. No I didn't.
Q. ... figure in accordance with the agreement?
A. I had no idea.

Q. Now you paid certain sums to an attorney in Hawaii to protect your rights to these monies?
A. Yes, I have.

2. In *Continental Insurance Company v. Bayless & Roberts, Inc.*, 608 P.2d 281, 295 (Alaska 1980), we cited Comment, Consent Judgments, 72 Harv.L.Rev. 1314, 1316 (1959) as generally describing the nature of consent judgments. The comment states in part on page 1316:

parties may give an agreement the attributes of a judgment by having it entered as such, that does not eliminate the need to interpret the agreement in order to determine what it, and therefore the judgment, requires the parties to do.[3]

Here the court interpreted the parties' agreement, and thus the decree, to require Norman to conclude the sale of the condominium as scheduled in the contract of sale and held that Norman had failed in this obligation. Having thus found that Norman had violated the decree the court was free to impose a remedy for that violation. The trial court did not grant relief from the decree, and therefore Civil Rule 60(b) is not here involved. What the court did was to determine what the decree meant, and enforce it in accordance with that meaning.

The courts seem to regard a consent judgment as a facility available to the parties as a matter of right by which they may imbue their contractual compromises with certain consequences of judgments.

3. If the construction of a consent judgment is drawn in question in a subsequent proceeding, appeal should lie from any determination made by a judge other than the one who entered the consent judgment. Similarly, a subsequent determination made by the judge who rendered the original judgment should be appealable if he was not previously required to consider the meaning of the judgment. *In both cases, the trial court proceeding resembles one involving the construction of a contract.* If, however, a judgment is construed by a judge who, at the time of its entry, was required to consider its meaning, it appears unlikely that the appellate court would reject the judge's interpretation of his own intent unless such interpretation could not reasonably have been contemplated by the parties.

Comment, Consent Judgments, 72 Harv.L.Rev. 1314, 1323 (1959). (Emphasis added; footnotes omitted).