860 P.2d 1286 (1993)
STATE of Alaska, Appellant,
v.
T.M., a Minor, Appellee.
STATE of Alaska, Appellant,
v.
J.B., a Minor, Appellee.
Nos. A-4239, A-4240.
Court of Appeals of Alaska.
October 22, 1993.
*1287 Nora King, Asst. Atty. Gen., Fairbanks, and Charles E. Cole, Atty. Gen., Juneau, for appellant.
Marcia E. Holland, Asst. Public Defender, Fairbanks, and John B. Salemi, Public Defender, Anchorage, for appellee.
Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

OPINION
MANNHEIMER, Judge.
T.M. and J.B. were each adjudicated delinquent minors in separate judgements. T.M. was placed on probation supervised by the Department of Health and Social Services; his probation expired on October 1, 1988. J.B. was likewise placed on supervised probation; his probation, extended once, ultimately expired on May 14, 1991.
On October 1, 1991, three years after T.M.'s probation expired, his attorney petitioned the superior court to set aside T.M.'s adjudication of delinquency. On November 11, 1991, six months after J.B.'s probation expired, his attorney likewise petitioned the superior court to set aside J.B.'s adjudication of delinquency. Both minors alleged that their good behavior since the time they were adjudicated delinquents justified setting their adjudications aside.
The minors relied on AS 47.10.100(a) as the court's authority to grant the relief they sought. The pertinent part of this statute reads:
Retention of jurisdiction over minor.
(a) The court retains jurisdiction over the [juvenile's] case and may at any time stay execution, modify, set aside, revoke, or enlarge a judgment or order, or grant a new hearing, in the exercise of its power of protection over the minor and for the minor's best interest, for a period of time not to exceed two years or in any event extend past the day the minor becomes 19, unless sooner discharged by the court... .
(Emphasis added) T.M. and J.B. argued that AS 47.10.100(c) gives the superior court the authority to set aside an adjudication of delinquency, not only for legal flaws in the adjudication process, but also based on a minor's subsequent good behavior during institutionalization and probation. The minors contended that this statute is the juvenile delinquency counterpart of AS 12.55.085, the statute that authorizes a sentencing judge in a criminal action to suspend imposition of a defendant's sentence, place the defendant on probation, and ultimately (if the defendant successfully completes probation) set aside the defendant's conviction.
The State objected that the superior court no longer had jurisdiction to grant the minors' requests. The State pointed out that, under AS 47.10.100(a), the superior court's jurisdiction over the minors' cases had ended when the minors were discharged from the court's supervision.
Nevertheless, Superior Court Judge Jay Hodges vacated T.M.'s delinquency adjudication. Judge Hodges ruled that, notwithstanding *1288 any limiting language in AS 47.10.100(a), the superior court had the inherent power to vacate any adjudication of delinquency it had previously entered. In J.B.'s case, Superior Court Judge Mary E. Greene apparently adopted the same view of the court's power, since she likewise vacated the delinquency adjudication over the State's jurisdictional objection. The State now appeals. We reverse.
Under AS 47.10.100(a), the superior court "retains jurisdiction over [a delinquent juvenile's] case ... [only] for a period of time not to exceed two years [from the date of the delinquency adjudication] or in any event [not to] extend past the day the minor becomes 19, unless sooner discharged by the court". See also AS 47.10.100(c), which declares that the superior court's children's jurisdiction over a minor "never extends beyond the minor's 19th birthday, except that the department may apply for and the court may grant an additional one-year period of supervision ... if continued supervision is in the best interests of the person and if the person consents to it."
Because T.M. and J.B. filed their motions after this time limitation on the court's jurisdiction had expired, the superior court based its action, not on AS 47.10.100(a), but on the court's "inherent" power to vacate any delinquency adjudication it had previously entered  even an adjudication that has no legal flaw. We conclude that the superior court does not possess this kind of inherent authority.
In general, when a statute or rule specifies a time limit on the court's power to modify or vacate a judgement, the court has no power to act outside this time limit. 46 Am.Jur.2d, Judgments, § 704, pp. 854-56; W. LaFave & J. Israel, Criminal Procedure (1984), § 25.2(e), Vol. 3, p. 131. In Davenport v. State, 543 P.2d 1204, 1210-11 (Alaska 1975), the supreme court declared that the superior court has no inherent power to retain jurisdiction over a criminal case and modify its judgement based on later events. Any power the superior court might have to modify a criminal judgement must stem from statute or rule.[1] The rule is the same in civil cases. See Stone v. Stone, 647 P.2d 582, 585-86 (Alaska 1982), in which the supreme court held that, after the expiration of the 1-year time limit specified in Alaska Civil Rule 60(b), the superior court no longer has the power to modify a judgement in a civil action on the basis of alleged fraud.[2]
The Alaska Supreme Court adhered to this same rule in Thomas v. State, 566 P.2d 630 (Alaska 1977). One issue in Thomas was whether a trial court had the authority to modify or reduce a sentence of imprisonment under Criminal Rule 35(a) when the defendant had not sought relief until after expiration of the time limit specified in the rule (at that time, 60 days following entry of judgement). Thomas, 566 P.2d at 638. The supreme court held that the trial court had the power to relax the time limit. Thomas, 566 P.2d at 639. However, the important aspect of the supreme court's ruling is that the supreme court did not rely on the superior court's "inherent" power to modify its judgements. Rather, *1289 the supreme court held that Criminal Rule 53 (the rule that allows courts to relax the provisions of the other criminal rules when strict adherence to them will work manifest injustice) was the source of the trial court's power to relax the time limit found in Rule 35(a). Id.
Thus, in Thomas the supreme court implicitly reaffirmed the doctrine it had announced in Davenport: that a trial court's power to modify or vacate a judgement must be exercised within the bounds (here, the time limits) of the applicable statutes and rules. The supreme court reaffirmed this same doctrine in Stone when the court held that the superior court has no power to amend or vacate a judgement obtained through fraud after the 1-year time limitation specified in Civil Rule 60(b) has expired. The supreme court's ruling in Stone was premised on the fact that Civil Rule 6(b)  the civil counterpart of Criminal Rule 53  explicitly states that the rule cannot be employed to relax the time limit of Civil Rule 60(b). Stone, 647 P.2d at 585-86.
Attempting to avoid this conclusion, T.M. and J.B. place considerable reliance on a portion of the holding in Thomas in which the supreme court held that "the constitutional grant of judicial power [in Article IV, Section 1 of the Alaska Constitution] encompasses the inherent judicial power of Alaska's trial courts to reduce or modify their own sentences." Thomas, 566 P.2d at 638. However, the supreme court in Thomas carefully distinguished (a) the superior court's inherent power to reduce or modify a sentence of imprisonment (that is, alter the terms of a type of sentence that the trial court was originally entitled to impose) from (b) the power to suspend the execution of a sentence and place a defendant on probation  a type of sentence which the court lacks the power to impose in the absence of express legislative authorization. Thomas, 566 P.2d at 637-38; Pete v. State, 379 P.2d 625, 626 (Alaska 1963).
In the present case, T.M. and J.B. asked the superior court to nullify two valid and ostensibly final judgements  an exercise of power arguably much broader than suspending execution of sentence and granting probation. The minors sought to have the superior court set aside their underlying adjudications, not because of any flaw in the judicial process, but because of their subsequent progress toward rehabilitation. T.M. and J.B. asked the court to grant them after-the-fact exoneration because of their good behavior  something that normally would be considered an act of "pardon".[3] Assuming for purposes of argument that the courts' exercise of such a power would be consistent with the "separation of powers" doctrine[4], Thomas ineluctably leads to the conclusion that this power is not inherent in the judiciary and would have to be granted by the legislature.
Thus, even assuming that AS 47.10.100(a) gives the superior court the power to set aside a delinquency adjudication based solely on the minor's subsequent good behavior (an issue that we specifically decline to decide), the court must act within the jurisdictional time limits established in the statute.
In their supplemental brief, T.M. and J.B. argue that the various provisions of Delinquency Rule 1 authorize the superior court to employ its "inherent" power to adopt any procedure and set any time limit the court believes fair. We cannot accept this reading of the rule. As we discussed above, the superior court does not have an "inherent" power to set aside a legally *1290 valid delinquency adjudication. Even if we assume that this power is granted by AS 47.10.100(a), the superior court is nevertheless presumptively obliged to follow the procedures and time limits established by that statute when exercising that power.
It is true that Delinquency Rule 1 authorizes the superior court to use any procedure specified in the delinquency rules, the civil rules, the criminal rules, or the Alaska statutes, or recognized at common law. But Delinquency Rule 1 does not give the superior court carte blanche authority to ignore or set aside statutory procedures and time limits. By its terms, Delinquency Rule 1(d) authorizes the superior court to ignore statutory requirements only when the delinquency rules provide an alternative procedure. The Delinquency Rules do not provide an alternative procedure which allows the superior court to set aside a valid delinquency adjudication. Likewise, Delinquency Rule 1(f) authorizes the superior court to ignore statutory requirements only when a civil rule, a criminal rule, or the common law grants the court the power to employ an alternative method of procedure.
Criminal Rule 53 (made applicable to juvenile proceedings by Delinquency Rule 1(e)) authorizes the superior court to relax any delinquency or criminal rule, but it does not authorize the court to relax or ignore statutes; the superior court's broad power to relax rules simply does not extend to statutory enactments. And while it is certainly arguable that the time limit for amending juvenile judgements specified in AS 47.10.100(a) involves a procedural matter that could be dealt with by court rule, the superior court lacks rule-making authority; the supreme court, which possesses sole rule-making authority, has enacted no rule altering the statutory limit.
In short, T.M. and J.B. have not cited any provision of the delinquency rules, the civil rules, the criminal rules, or the common law that addresses the issue of setting aside a valid delinquency adjudication or that provides specific authority for the superior court to ignore the time limitation contained in AS 47.10.100(a). We have found none. We therefore conclude that, even assuming that AS 47.10.100(a) authorizes the superior court to set aside a valid delinquency adjudication because of the minor's subsequent rehabilitation, and even assuming that the time limitation contained in AS 47.10.100(a) is "procedural" for rule-making purposes, the superior court is nevertheless governed by that statutory limitation because the court rules provide no alternative time limit or procedural authority.
For these reasons, the decisions of the superior court are REVERSED and the delinquency adjudications of T.M. and J.B. are reinstated.
NOTES
[1] But see United States v. Bishop, 774 F.2d 771, 773-74 (7th Cir.1985), and Trueblood Longknife v. United States, 381 F.2d 17, 19-20 (9th Cir.1967) (even after the time limitation of Federal Criminal Rule 35 has expired, federal courts retain the inherent power to modify a criminal sentence when the sentencing decision was premised on a defendant's fraudulent assertions about his past or his current circumstances).
[2] In Stone, one of two divorced spouses (the former wife) asked the superior court to modify the property settlement that had been incorporated in the divorce decree; she alleged that her former husband had fraudulently misrepresented the value of certain property. The superior court granted relief, but the supreme court reversed. The supreme court noted Alaska Civil Rule 60(b) specifies a 1-year time limit for seeking relief from a judgement based on allegations of fraud, a time limit that cannot be relaxed under Civil Rule 6(b). The wife's motion to modify the divorce decree was filed 15 months after the decree was entered. The supreme court held that, because the wife had failed to meet the 1-year deadline, the superior court lacked jurisdiction to modify the divorce decree. Stone, 647 P.2d at 585-86.
[3] A full pardon "frees the criminal without any condition whatever[, erasing both] the punishment prescribed for the offense and the guilt of the offender. It obliterates in legal contemplation the offense itself... ." Black's Law Dictionary (6th ed. 1990), p. 1113 (citing State v. Cullen, 14 Wash.2d 105, 127 P.2d 257, 259 (1942)). The Alaska Constitution, Article III, Section 21, reserves this power to the governor.
[4] See LaFave & Israel, Criminal Procedure (1984), § 25.2(e), Vol. 3, p. 131.