Joe A. KENDLER, Appellant,

v.

Marie E. KENDLER, Appellee.

No. S–3689.

Supreme Court of Alaska.

Aug. 30, 1991.

Kirsten Tinglum, Ashburn & Mason, Anchorage, for appellant.

No appearance for Appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

### I.

Joe and Marie Kendler were married in Juneau in 1950. In September of 1985, after thirty-five years of marriage, Marie filed for divorce. The superior court entered a divorce decree which incorporated the parties' property settlement agreement.

Paragraph ten of the property settlement agreement ("paragraph 10") states,

Defendant agrees that he intends to will all of his property to his children, Debra Baxter and Sandra Spickler, or to their children or to their children's lineal descendants. Mr. Kendler agrees that it is his intent that his last will and testament make this distribution of his property. In the event he remarries, defendant agrees that he will execute a prenuptial agreement providing for this testament and disposition of his property. His children or the parties' grandchildren or the grandchildren's lineal descendants will remain beneficiaries on all his life and other insurance policies.

At the time the property settlement agreement was entered, Marie's attorney stated "[i]t's also understood by both parties, and they've been so advised by their attorneys, that there's some question about whether that kind of provision would ever be en-

forceable but, nonetheless, it will go into the property settlement."

In September 1987, Joe married his current wife, Beverly. Joe and Beverly refused to execute a prenuptial agreement in accordance with the property settlement agreement.

Following Joe's remarriage, Marie moved for an order to show cause, seeking to hold Joe in contempt of court for "failure to comply with terms of the property settlement incorporated into the judgment and decree." Her motion alleged that, "[b]y far the most flagrant violation of the agreement is his failure to comply with paragraph 10." In support of the motion, Marie cited Joe's remarriage "without entering into a prenuptial agreement, drafting a will[,] or ... taking any steps to protect the inheritance rights of his children by Mrs. Kendler or the rights of his grandchildren."

The superior court determined that it would treat Marie's motion as both an order to show cause *"and* as a motion to enforce settlement." (Emphasis in original). After reviewing the arguments of the parties, the superior court issued its first memorandum of decision and order. The superior court noted, "[b]ecause of the insistence of the parties ..., poor drafting, or a combination of the two, the court is left to interpret an extremely vague paragraph 10 of the property settlement agreement." (Footnote omitted).

The court ruled that:

Paragraph 10, *supra,* is fairly interpreted to mean that Joe must will all of his property to his children or their descendants.... The current will, without a prenuptial agreement, does not prevent a claim by Beverly that she has community property rights despite any will and that she has rights as an omitted spouse. *See, e.g.,* AS 13.11.110.

Therefore, at a minimum, Joe will be required ... to execute a new will conforming to his obligations under paragraph 10 and specifically acknowledging the existence of his present wife and his pre-existing obligations under paragraph 10 to will his estate to his children and their descendants. Joe is forbidden to execute any other will or codicils unless he submits them to Marie within seven days of their execution.

The superior court also discerned "ominous signals in the record" of possible bad faith on Joe's part.[1] Therefore, the court required:

Joe to account to Marie on an annual basis for all assets set out in (2)(a)–(q) of the property settlement agreement and trace the proceeds of the sale or other change in the form or status of those assets; Joe is forbidden to commingle the assets or proceeds with assets belonging to or controlled by Beverly Kendler.

Furthermore, Joe was "forbidden to transfer any real or personal property, except for gifts or support paid out of current income, to Beverly Kendler."[2]

Thereafter, Joe provided Marie with a copy of his new will, which complied with paragraph 10, and an accounting of the assets referenced in 2(a)–(q) of the property settlement agreement, as required by the court. The following summer, Joe and Beverly signed and executed a postnuptial agreement. Under the agreement, Beverly

---

1. The superior court considered many of Joe's legal arguments frivolous, such as Joe's claim that the lack of a prenuptial agreement was insignificant, Joe's "implied claim that, since Marie did not insist that a subsequent wife renounce any right to inherit from Joe, such was not contemplated by the requirement that there be a prenuptial agreement," Joe's claim that the prenuptial agreement was an unreasonable restraint on marriage, and "the negative pregnant in the claim that 'Joe has not made any such transfers [of assets] *to date.*'" (Emphasis in original).

2. The superior court stated in a footnote that

[b]y these orders the court does not mean to imply that Joe may not use his assets in a reasonable fashion consistent with his station in life. Marie and the children have no veto over Joe's decisions to take a vacation, buy a new car, make investments, make charitable donations, etc., so long as they do not defeat his children's rights. The law does not require Joe to live in a style different than the style in which other successful businesspersons live, except that he lacks the freedom he would otherwise have to dissipate his assets.

agreed to waive any claims she would have as a surviving spouse to Joe's separate property. Joe then moved for an order concluding the action and Marie subsequently filed a motion for costs and actual attorney's fees "in light of the frivolous and vexatious nature of the opposition by defendant."

In its final decision and order, the superior court ruled that Joe's defenses were "frivolous and/or vexatious" and that Marie was entitled to costs and attorney's fees under Alaska Rules of Civil Procedures 77(j) (formerly R.Civ.P. 77(*l*)) and & 82.[3] In addition, the superior court ordered that

1. Marie's motion to enforce is granted;
2. Joe [is to] conform to the mandates of the settlement agreement, the decree, and the other orders of this court (*e.g.* the annual accounting of assets);
3. Joe is not to change, revoke, or agree to revoke the nuptial agreement filed with the court on July 17, 1989;
4. Beverly's motion to dismiss is denied as moot....

In this appeal Joe presents three issues for review:

1. Whether the superior court's enforcement of paragraph 10 of the property settlement agreement constitutes plain error.
2. Whether the superior court's interpretation of paragraph 10 of the property settlement agreement is void as an improper modification of the divorce decree.
3. Whether the superior court erred in granting attorney's fees to Marie.

**3.** Civil Rule 77(*l*) states,
[t]he presentation to the court of frivolous or unnecessary motions or frivolous or unnecessary opposition to motions, which unduly delay the course of the action proceeding, or the filing of any motion to dismiss or motion to strike for the purpose of delay where no reasonable ground appears therefor subjects counsel presenting or filing such, at the discretion of the court, to imposition of costs and attorney's fees to the opposing party, to be fixed by the court and paid to the clerk of court, and any other sanctions, which may be authorized by rule or law.
Civil Rule 82(a)(2) states,

II.

Joe argues that the superior court's orders constitute a modification of the divorce decree. Joe contends that the superior court has, without authority, amended the property settlement agreement as incorporated in the divorce by adding terms which were not contemplated by the parties.

The superior court's final order, which incorporates the terms and conditions of its original order, in effect, imposes seven conditions upon Joe:

1. Joe must execute a will conforming to his obligations under paragraph 10 of the property settlement agreement.
2. Joe is forbidden to change this will without Marie's permission.
3. Joe must provide Marie with an annual accounting of all his assets acquired from the marital estate of Marie and Joe, including a tracing of proceeds from the sale of any such asset.
4. Joe may not commingle his assets acquired from the marital estate with assets of his current marriage.
5. Joe may not change or revoke his postnuptial agreement with his current wife.
6. Joe must annually provide Marie with evidence that his children remain as beneficiaries on his life and other insurance policies.
7. Joe must manage his real and personal property in such a way as to not defeat the inheritance of his children.

Joe's major point on appeal is that the superior court exceeded its jurisdiction when it issued its final order.[4] Therefore,

[i]n actions where the money judgment is not an accurate criterion for determining the fee to be allowed to the prevailing side, the court shall award a fee commensurate with the amount and value of legal services rendered.

.　.　.　.　.

The court awarded $8000 in attorney fees. Marie had requested $10,177.58.

**4.** In making this contention, we do not understand Joe's requested relief to include permission to execute a will that does not conform to paragraph 10, to remove his children as beneficiaries on his insurance policies, or to revoke the postnuptial agreement with Beverly.

the conditions from which Joe seeks relief include the court ordered requirements for an annual accounting of both assets and insurance policies, to refrain from changing his will without Marie's permission, to refrain from commingling funds with his current wife, and to manage his real and personal property in such a way as to not defeat the inheritance of his children. We agree with Joe's position in this appeal for the following reasons.

Characterizing Marie's motion as one which, in part, sought enforcement of the settlement agreement, the superior court proceeded to interpret paragraph 10 of the property settlement agreement. "[A] consent judgment is a bilateral contract wherein the parties adjust their differences by mutual consent." *Stone v. Stone*, 647 P.2d 582, 588 (Alaska 1982) (Matthews, J., dissenting) (quoting *Continental Ins. Co. v. Bayless and Roberts, Inc.*, 608 P.2d 281, 295 (Alaska 1980)). In *Craig Taylor Equip. Corp. v. Pettibone Corp.*, this court said:

> Contracts are to be interpreted so as to give effect to the reasonable expectations of the parties, that is, to give effect to the meaning of the words which the party using them should reasonably have apprehended that they would be understood by the other party.

659 P.2d 594, 597 (Alaska 1983).

In regard to the superior court's interpretation of paragraph 10, we are in agreement with Joe's contentions that no provision guarantees what property would be willed to his children, no provision requires "any sworn accountings, affidavits or proof of compliance during Joe's lifetime." Nor does any provision restrict Joe from "sharing his assets during his life time with a partner." In short, there is no support in the record for the superior court's interpretation of the contract as providing for these provisions.

Thus, the final order of the superior court can be viewed as adding additional terms to the divorce decree. At the time the superior court entered its final order, Joe had complied with all of the express terms of paragraph 10.[5] He had already made a will and purchased life insurance naming his children as beneficiaries. He had executed a nuptial agreement with his current wife. Given Joe's compliance, the superior court's orders can be viewed going beyond mere interpretation of a vague and poorly drafted settlement agreement. Focusing, as we must, on the time when the superior court issued its final order, it appears that the superior court's order modifies a final judgment. As such, the questioned provisions of the order exceed the jurisdiction of the superior court.[6]

### III.

Joe also argues that the superior court erred in its award of attorneys' fees to Marie. Given Joe's success on appeal, we vacate the award of attorneys fees and remand for a new determination of attorneys' fees under Civil Rule 82. *Dillingham Commercial Co. v. City of Dillingham*, 705 P.2d 410, 417 (Alaska 1985).

REVERSED and REMANDED to the superior court for further proceedings consistent with this opinion.

---

**5.** We note that "[a] covenant of good faith and fair dealing is an implied component of all contracts as a matter of law." *Alaska Pac. Assurance Co. v. Collins*, 794 P.2d 936 (Alaska 1990) (citing *O.K. Lumber v. Providence Washington Ins. Co.*, 759 P.2d 523, 525 (Alaska 1988)).

**6.** To the extent that the superior court's order rests on a finding of bad faith on Joe's part, we reject that finding. Characterization of a defense as "frivolous" is a question of law. *DeNardo v. Municipality of Anchorage*, 775 P.2d 515, 518 (Alaska), *cert. denied*, 493 U.S. 922, 110 S.Ct. 287, 107 L.Ed.2d 267 (1989). While some of Joe's legal arguments were meritless, viewing Joe's arguments as a whole, we do not find them "vexatious" or "frivolous."