Robert L. HORCHOVER, Appellant,

v.

Sylvia F. FIELD, f/k/a Sylvia
F. Horchover, Appellee.

No. S–7989.

Supreme Court of Alaska.

Oct. 16, 1998.

Loren Domke, Loren Domke, P.C., Juneau, for Appellant.

R. Scott Taylor, Rice, Volland & Taylor, P.C., Anchorage, for Appellee.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

COMPTON, Justice.

## I. INTRODUCTION

Robert Horchover refused to abide by certain provisions of a Property Settlement Agreement that the superior court had incorporated into the decree that divorced him and Sylvia Horchover, now known as Sylvia Field. Sylvia moved the superior court: (1) to order Robert to show cause why he should not be held in contempt of court; (2) to order him to provide an accounting and to transfer certain funds to her; and (3) to reduce his arrearages to judgment. The superior court reduced Robert's arrearages to judgment, required him to provide a full accounting of two investments and of his dentistry practice's pension plan, and required him to turn over to Sylvia some artwork. After having paid the judgment, Robert requested and received clarification from the superior court regarding the accounting and artwork requirements. Robert only appeals the order requiring him to provide Sylvia with an accounting.

We conclude that the superior court's order requiring Robert to provide an accounting was a valid order enforcing the divorce decree, not an invalid order adding terms to the parties' Property Settlement Agreement incorporated into that decree. Furthermore, we conclude that the order was not an abuse of the court's discretion.

## II. FACTS AND PROCEEDINGS

In November 1992 Robert L. Horchover and Sylvia F. Horchover–Field were divorced after thirty-three years of marriage. The Decree of Divorce provided that

the assets and liabilities of the parties shall be divided in accordance with the Property Settlement Agreement and Qualified Domestic Relations Order ["Property Settle-

ment Agreement"] executed by the parties and previously filed with this court and that the terms and conditions of the Property Settlement Agreement shall be fully incorporated into this decree of divorce.

The superior court concluded that the "Property Settlement Agreement [was] a fair and equitable distribution of the parties' property, assets and debts."

The Property Settlement Agreement provides that Sylvia shall receive (among other things):

5. Sixty-five percent (65%) of the net value of the combined profit sharing plans of the two parties. This value shall be calculated by deducting the outstanding loan obligations from the gross amount of the two combined plans.

. . . .

10. Fifty percent (50%) of all income attributable to the parties from [their investment in] the Waterfront Hotel project.

11. The sum of Two Thousand Dollars ($2,000.00) per month payable by husband to wife from January 1, 1995, with the last payment due November 1, 1996. This payment is a distribution of marital property.

12. Fifty percent (50%) of all income attributable to husband's share of [a] licensing agreement with Schwarb Foundry, presently held by 3S Pacific Corporation.

Robert did not begin making the $2,000 payments to Sylvia on January 1, 1995, as required by paragraph 11 of the Property Settlement Agreement. In June Robert's attorney sent a letter to Sylvia's attorney alleging that Sylvia had diverted money from Robert's dentistry business in 1988 and 1989.[1] The letter stated, in part:

Dr. Horchover recognizes his responsibilities under the Settlement Agreement, but feels strongly that it was implicit in the settlement process that both parties deal honestly with each other and make full disclosure of relevant asset information.

---

1. Sylvia served as the bookkeeper for Robert's dentist office.

If Sylvia has withheld material information on the source of funds in [her personal] account, or has gone further and affirmatively misrepresented the source of these funds, I think she will be in a very poor position to enforce any rights under the Settlement Agreement. Please ask your client to cooperate. Dr. Horchover would like to resolve this issue in the next couple of months. Thank you.

In August 1996 Sylvia moved for "an order to show cause why [Robert] should not be held in contempt of court; for an order requiring an accounting; and for transfer, of certain funds; and for reduction of arrearages to judgment." She requested an accounting of the dentistry practice's pension profit sharing plan, the Juneau Waterfront Hotel project (Waterfront Project), the Schwarb Foundry Project, and two other investments no longer at issue. In her memorandum in support of her motion, Sylvia stated that "it appears that there are additional stocks and accounts receivable which have not been identified or transferred. [I] seek[ ] an accounting of all assets and transactions within the pension plan and profit sharing plans from the date of divorce to the present and an immediate transfer of all sums and assets due [me]." Additionally, Sylvia requested an accounting of the other investments because, "[g]iven the history of this divorce, [she][was] concerned that these assets may be modified or liquidated in a way that prevents her from discovering money which is due her."

Robert opposed Sylvia's motion. Regarding the request for accounting, Robert stated:

Sylvia raises a number of issues which go beyond the terms of the property settlement. She has asked [me] for an accounting of various notes receivables due the retirement plan, for an accounting of two

worthless equities held by the plan, and for an accounting of the Juneau Waterfront Hotel Project and an accounting of the Schwarb Foundry project.

Robert argued that he had fully complied with the property settlement "and [was] not required to furnish any of the accountings requested, with the exception of the Schwarb Foundry where he is the general project manager." [2]

In January 1997 the superior court granted Sylvia's motion to reduce Robert's arrearages to a judgment and ordered him to provide to her

an accounting of the Robert L. Horchover, D.D.S., Pension and Profit Sharing Plans and transfer to [Sylvia] all sums in those plans which were awarded to her in the property settlement agreement, . . . [and to provide] a full accounting of the activities of the Juneau Waterfront Hotel Project and the Schwarb Foundry Project.

Robert moved the court to clarify the order requiring him to provide Sylvia with an accounting.[3]

In May 1997 the superior court issued its Order re Clarification. It ordered Robert to provide Sylvia, within twenty days of the date of the order, with:

1. A complete accounting of all assets and transactions in the pension and profit sharing plan from the date of divorce to the date of this order. [Robert] shall bear the full cost of such accounting.

2. A copy of the books of the Juneau Waterfront Hotel project or its successor entities.

3. A complete copy of the books of the Schwarb Foundry project or its successor entities.

<hr>

2. As a result of Robert's concession in superior court that he is obligated to provide Sylvia with an accounting of the Schwarb Foundry Project, we will not consider the argument to the contrary that he makes on appeal. *See Toney v. City of Anchorage Police Dep't*, 950 P.2d 123, 126 (Alaska 1997) (finding persuasive that "a number

of other courts have held that when a party concedes a fact before the trial court, the party may not later contest it").

3. Robert also filed two motions for reconsideration, a discovery motion, and a motion to enforce

This appeal followed.[4]

## III. DISCUSSION

### A. Standard of Review

The parties disagree on the proper standard of review. Robert argues that because the Property Settlement Agreement is a bilateral contract, and the superior court interpreted it in requiring him to provide an accounting, this court should review the superior court's order *de novo*. *De novo* review is appropriate, Robert argues, because "[t]he issue is whether the trial court had jurisdiction to interpret the property settlement and to imply conditions and obligations not anticipated at the time of the settlement or agreed to by the parties." Robert cites to our decision in *Kendler v. Kendler*, 816 P.2d 193 (Alaska 1991). Sylvia, however, argues that we should review the superior court's order for an abuse of discretion. She states that the court was merely enforcing its divorce decree, which incorporated the Property Settlement Agreement, and therefore the abuse of discretion standard applies.

■■■ Whether the superior court added terms to the Property Settlement Agreement or was merely enforcing the agreement, as incorporated into its divorce decree, is a question of law that we review *de novo*. *See Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979). On questions of law, our duty "is to adopt the rule of law which is most persuasive in light of precedent, reason, and policy." *Id.* If the superior court's order was merely enforcing the Property Settlement Agreement, as incorporated into its divorce decree, we review the order for an abuse of discretion. *See Meyeres v. Meyeres*, 705 P.2d 921, 922–23 (Alaska 1985) (reviewing for an abuse of discretion the trial court's ruling in favor of the ex-husband's motion to enforce the terms of the divorce decree). *See also Roh-*

*weder v. Fleetwood Homes of Or., Inc.*, 767 P.2d 187, 190 (Alaska 1989) (reviewing for an abuse of discretion discovery sanctions imposed by a superior court in an effort "to enforce its discovery orders"); *Sanguinetti v. Sanguinetti*, 628 P.2d 913, 916 (Alaska 1981) (reviewing for an abuse of discretion a trial court's decision to deny "the mother's motion to enforce the home study order and to reopen the case"). If the order instead implicitly modified or added terms to the agreement, then it is void.

■■■ While we have held that property settlement agreements are bilateral contracts,[5] that does not require us to adopt Robert's argument that we should review the superior court's order *de novo*. We have repeatedly held that a property settlement agreement incorporated into a divorce decree merges with that decree. *See, e.g., Cedergreen v. Cedergreen*, 811 P.2d 784, 786 (Alaska 1991) (stating that a party could enforce terms of a property settlement agreement by moving the court to enforce its divorce decree because "the parties' settlement was explicitly merged into its decree"); *Stone v. Stone*, 647 P.2d 582, 584 (Alaska 1982) ("A property settlement incorporated into a divorce decree is merged into the decree, so that the rights of the parties derive from the decree, not the agreement."); *O'Link v. O'Link*, 632 P.2d 225, 228 (Alaska 1981) ("A property division incorporated within a divorce decree is a final judgment and is modifiable to the same extent as any equitable decree of the court."). Furthermore, we have explicitly stated that "[p]rinciples of contract law are not applicable in an attempt to obtain relief from a final judgment [when the final judgment comprises] the terms of a property settlement incorporated into a divorce decree." *Stone*, 647 P.2d at 585.

---

the Property Settlement Agreement. The court denied them.

4. In his points on appeal, Robert contests the superior court's award of attorney's fees, its denial of his motion to enforce the Property Settlement Agreement, and its order requiring him to provide Sylvia with accountings. In his brief, Robert explicitly abandons the first two issues and only argues the third, i.e., the requirement that he provide Sylvia with accountings.

5. In *Kendler* we quoted with approval Justice Matthews's dissent in *Stone v. Stone*, 647 P.2d 582 (Alaska 1982), which stated that "[a] consent judgment is a bilateral contract wherein the parties adjust their differences by mutual consent." *Kendler v. Kendler*, 816 P.2d 193, 196 (Alaska 1991) (quoting *Stone*, 647 P.2d at 588) (Matthews, J., dissenting).

Thus, if the superior court was merely enforcing the Horchovers' divorce decree, we review the superior court's actions as we would any order issued by the superior court in an attempt to enforce one of its final decrees—that is, for an abuse of discretion.

We must first determine, *de novo*, whether the superior court added terms to the Property Settlement Agreement when it required Robert to provide Sylvia with an accounting, or whether the superior court was merely enforcing the agreement, which had merged with the divorce decree.[6] If we conclude that the superior court was merely enforcing the divorce decree, we must then determine whether the superior court abused its discretion in so doing. If, however, we conclude that the superior court added terms to the Property Settlement Agreement when it ordered Robert to supply an accounting, then the superior court exceeded its jurisdiction by modifying a bilateral contract, and we must vacate the order.

■ For the following reasons, we conclude that the superior court's order was merely enforcing the divorce decree; it did not abuse its discretion in requiring Robert to provide Sylvia with an accounting.

B. *The Superior Court's Order Requiring Robert to Provide an Accounting Merely Serves to Enforce the Property Settlement Agreement.*

1. *The parties' arguments*

Robert's argument that he should not be required to provide Sylvia with an accounting can be summed up as follows: "The property settlement does not impose any obligation on Robert to provide Sylvia with accountings or records or documents for either project or for the corporate pension plan." Because the Property Settlement Agreement is devoid of any accounting requirements, Robert argues, the superior court exceeded its jurisdiction by adding such a requirement to the agreement. Robert cites *Kendler* to support his argument.

In *Kendler*, the superior court incorporated Joe and Marie Kendler's property settle-

ment agreement in a divorce decree. *See Kendler*, 816 P.2d at 193. Joe failed to abide by paragraph 10 of the agreement; thus, Marie moved for "an order to show cause, seeking to hold Joe in contempt for 'failure to comply with terms of the property settlement incorporated into the judgment and decree.'" *Id.* at 194. The superior court ordered Joe to conform with paragraph 10 and, because of "'possible bad faith on Joe's part,'" also required him to, among other things, provide an accounting to Marie "'on an annual basis for all assets set out in ... the property settlement agreement.'" *Id.* at 194–95. "The superior court's final order," we noted, "which incorporates the terms and conditions of its original order, in effect, imposes seven conditions upon Joe." *Id.* at 195. Joe appealed, arguing that "the superior court has, without authority, amended the property settlement agreement as incorporated in the divorce [decree] by adding terms which were not contemplated by the parties." *Id.* We agreed. *See id.* We reviewed the superior court's order as one which "interpreted paragraph 10 of the property settlement agreement." *Id.* at 196. We concluded that, because the agreement did not require Joe to provide an accounting (or any of the other things ordered by the superior court), the superior court's final order "[could] be viewed as adding additional terms to the divorce decree." *Id.* at 196. Specifically, we characterized the court's actions as not merely enforcing the divorce decree, or interpreting a vague contract provision, but instead added terms as Joe had complied with paragraph 10 at the time the court issued the additional requirements. *See id.*

Robert argues that "*Kendler* is directly on point." "Viewed objectively," Robert states, "no provision in the Horchover settlement can be interpreted as burdening Robert with any accounting expenses or responsibilities or with any records disclosure duties." Therefore, by "requiring Robert to furnish any information or accountings to Sylvia regarding either the pension plan or the two projects, the Superior Court added additional terms to the contract."

---

**6.** This initial step accommodates the concerns that Justice Matthews raised in his dissent in

*Stone;* this court later adopted his reasoning in *Kendler. See supra* note 5.

Sylvia, however, argues that the superior court's order merely enforced the "property division incorporated into the parties' divorce decree, [and therefore] the post-judgment order was well within the trial court's jurisdiction." The superior court, Sylvia argues, was merely enforcing the decree by providing her "with a means of determining the value of the assets awarded to her." Sylvia contends that requiring an accounting is justified in light of Robert's "history of vexatious noncompliance with the settlement agreement." [7]

Sylvia distinguishes *Kendler*. She asserts that, in contrast to the order in this case, which only seeks "compliance with the express terms of the parties' settlement agreement," the superior court in *Kendler* added terms that went beyond mere enforcement. In this case, Sylvia argues, the superior court was merely enforcing the agreement because

[a]t the time of the order, [Robert] had not fully complied with the decreed property division. Assets in the profit sharing plan had not been transferred and [Sylvia] had received nothing from the Juneau Waterfront Hotel and Schwarb Foundry projects. The only way for [her] to ascertain and receive her awarded share of these

assets was for her to receive an accounting of the profit sharing plan and copies of the books for the projects.

In his reply brief, Robert denies noncompliance with the Property Settlement Agreement, aside from his initial, now-resolved, refusal to pay the required $2,000 monthly payments.[8] Robert states that he did not fail to "turn over 65 percent of the profit sharing plan." He refused initially to turn over part of a private loan repayment as a setoff for the missing $41,418 [that he alleged Sylvia had embezzled from his dentistry business]. Sylvia did receive a $96,540 payment before her enforcement motion was filed and received an accounting of all funds due.[9]

### 2. The superior court's order

The superior court's language discloses that it requested an accounting from Robert solely for the purpose of enforcing the divorce decree. First, in its original order requiring Robert to provide an accounting, the superior court stated that Robert shall provide an accounting of the pension plan and "shall transfer to [Sylvia] all sums in

---

7. In her memorandum in support of her motion to show cause, Sylvia requested an accounting of the pension plan because

in June 1993 Robert received repayment of an installment note which was an asset of the profit sharing and pension plan. [Her] portion of that plan was not transferred to her. According to a letter to Robert from the plan administrator, as of October 25, 1995, [her] share of that payment ... was $96,078. In addition, it appears that there are additional stocks and accounts receivable which have not been identified or transferred.

Sylvia, therefore, sought "an accounting of all assets and transactions within the pension and profit sharing plans from the date of divorce to the present and an immediate transfer of all sums and assets due her." Sylvia's only basis for seeking an accounting of the Schwarb Foundry and Waterfront projects was that she was "concerned that these assets may be modified or liquidated in a way that prevents her from discovering money which is due her."

8. In his opposition to Sylvia's motion to show cause, Robert stated that he had fully complied with the "property settlement and is not required to furnish any of the accountings requested, with the exception of the Schwarb Foundry where he is the general project manager." In support of his argument that he was in full compliance with

the property settlement agreement, Robert stated that "Sylvia received $96,540 in late August and is due an additional $51,873.48 less set offs for Robert's share of the Clark note proceeds and any diversion of marital funds."

9. Also in his reply brief, Robert argues for the first time that the Qualified Domestic Relations Order (QDRO) provided that "Sylvia as the alternate payee 'was responsible for payment of 65% of the Plan administrative costs.' These costs include 'accounting' and 'other normal plan administration expenses.'" (Emphasis added). Therefore, Robert argues, the superior court's orders requiring Robert to bear the full expenses of an accounting "substantially changed" the QDRO.

We do not consider this argument for two reasons. First, Robert raises it for the first time in his reply brief. *See, e.g., Danco Exploration, Inc. v. State*, 924 P.2d 432, 434–35 n. 1 (Alaska 1996)("[N]ew arguments presented for the first time in reply briefs are *considered waived.*"); *Sumner v. Eagle Nest Hotel*, 894 P.2d 628, 632 (Alaska 1995) (same). Second, Robert did not present this argument to the superior court. *See, e.g., Lewis v. State*, 565 P.2d 846, 853 (Alaska 1977) ("[W]e will not address on appeal issues not presented to the trial court."); *Leigh v. Lundquist*, 540 P.2d 492, 497 (Alaska 1975) (same).

those plans which were awarded to her in the property settlement agreement." This language suggests that the court was not altering the agreement, but rather requiring Robert to pay Sylvia the sums that the Property Settlement Agreement in fact had awarded her. Second, pursuant to Robert's motion requesting a clarification of the original order requiring him to provide an accounting of the pension plan, the Waterfront Project, and the Schwarb Foundry Project, the superior court specified that Robert must provide Sylvia with "[a] complete accounting of all assets and transactions in the pension and profit sharing plan *from the date of divorce to the date of this order.*" (Emphasis added.)

Sylvia alleged that Robert was not abiding by the agreement, i.e., that she was not receiving sixty-five percent of the pension plan funds, as the agreement required. In order for the superior court to enforce its divorce decree, it first had to ascertain whether Sylvia had received the funds due her. To determine whether Sylvia had received the designated funds, the court had to be current on the pension plan's fiscal activity. While requiring an accounting of the pension plan may appear as an additional requirement, in reality it was the only way for the court to determine whether Robert was honoring the divorce decree.

While Robert relies heavily on *Kendler* to support his argument that the superior court was not merely enforcing its divorce decree when it required him to provide an accounting, *Kendler* is distinguishable. In *Kendler* we noted that Joe had fully complied with the express terms of the property settlement agreement, and therefore the superior court's requirements were in error because they constituted new terms to the agreement. *See Kendler*, 816 P.2d at 196. We specifically stated that we were "[f]ocusing, as we must, on the time when the superior court issued its final order [enforcing the decree]." *Id.* Here, Sylvia contends, as of the time the court issued its enforcement order, that Robert had not fully complied with the Property Settlement Agreement,

and there were pension plan funds due her. Unlike in *Kendler*, where we readily determined that Joe was in full compliance with the property settlement agreement, in the instant case an accounting of the pension plan is required to determine whether Robert is in full compliance with the divorce decree.

We conclude that the superior court was simply enforcing its decree of divorce when it ordered Robert to provide an accounting of the pension plan.

Similarly, we conclude that the superior court's order requiring Robert to turn over a copy of the Waterfront Project books [10] also served to enforce its divorce decree. The Property Settlement Agreement provided that Sylvia should receive "[f]ifty percent (50%) of all income attributable to the parties from the Waterfront Hotel Project." Based on Robert's assertions that the project was not producing any income, Sylvia has received no payments from the project. For the court to enforce the terms of the Property Settlement Agreement, it first had to determine whether the Waterfront Project was defunct. Therefore, the court's order did not disturb the parties' agreement to share the projects' proceeds evenly; it just provided a way to determine if any divisible proceeds existed.

C. *It Was Not an Abuse of Discretion to Require Robert to Provide Sylvia with an Accounting of the Pension Plan and a Copy of the Waterfront Project Books.*

Based on our conclusion that the superior court's order requiring Robert to provide an accounting of the dentistry's pension plan and a copy of the Waterfront Project books was merely an order enforcing its divorce decree, we must now determine whether the court abused its discretion in making that order. We conclude that it did not.

■ We will find that the superior court abused its discretion if we "ha[ve] a definite and firm conviction that a mistake has been

10. As stated at supra note 2, because Robert conceded below that he is obligated to provide Sylvia with an accounting of the Schwarb Foundry Project, we need not address his contrary argument on appeal.

made." *Department of Health & Soc. Servs. v. Alaska State Hosp. & Nursing Home Ass'n,* 856 P.2d 755, 765 (Alaska 1993). "This standard of review bids us give considerable deference to the decision of the trial judge." *Ryan v. State,* 899 P.2d 1371, 1379 (Alaska App.1995).

We have stated that, when a party brings a motion to enforce a divorce decree, "[t]he superior court has inherent power, and also the duty to enforce its divorce decrees." *Cedergreen,* 811 P.2d at 786. Furthermore, we have stated that this duty applies in cases when it is "enforcing its final decree [which consists of] the parties' settlement [that it had] explicitly merged into its decree." *Id.*

 Based on our precedent which favors a superior court's efforts to enforce its divorce decrees, the court did not abuse its discretion by ordering Robert to provide an accounting as a means to ensure that Sylvia is receiving the funds that the Property Settlement Agreement allocates to her. Robert had repeatedly chosen to only selectively abide by the terms of the Property Settlement Agreement. For instance, Robert refused to pay Sylvia $2,000 per month as required by paragraph 11 of the agreement because he suspected that she had embezzled money from his dentistry business. Robert "offered to comply with [paragraph 11] if [Sylvia] furnishe[d] a satisfactory explanation [of] and evidence for" the alleged "highly irregular diversions of marital funds." Robert's actions show his willingness to honor the Property Settlement Agreement on his own terms, and only when he is "satisfied" with Sylvia's actions.[11] Furthermore, in opposing Sylvia's motion for an order to show cause, Robert stated that "Sylvia received $96,540 in late August and is due an additional $51,873.48 less set offs for Robert's share of the Clark note proceeds and *any diversions of marital funds.*" (Emphasis added.) This statement reveals that Robert, once again, was willing to selectively self-enforce the terms of the Property Settlement Agreement as he saw fit. In sum, Robert has shown an indifference to the legal force of the Property Settlement Agreement that was incorporated into the court's divorce decree. Robert is not excused, as he appears to believe, from honoring the court's decree except when he is unilaterally satisfied with Sylvia's actions.

An accounting of the pension plan and provision of a copy of the Waterfront Project books appears to be a reasonable, and least costly, way of ensuring that Robert is honoring the court's decree. While requiring Robert to provide an accounting of the pension plan may be expensive, the court's order is not an abuse of discretion, in light of Robert's demonstrated willingness to ignore his obligations under the agreement.

## IV. CONCLUSION

We conclude that the superior court's order requiring Robert to provide Sylvia with an accounting of the pension plan and a copy of the Waterfront Project and Schwarb Foundry Project books is a valid attempt to enforce the divorce decree. Further, we conclude that the order was not an abuse of discretion. We AFFIRM the superior court's order.

---

11. While Robert's appeal professes that any order from the court that would in some way alter his obligations under the Property Settlement Agreement is void, he was willing to ignore a requirement of that same Agreement when it benefitted him to do so.