NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ROBERT W. GOTTSTEIN, | ) | |
| | ) | Supreme Court No. S-18042 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-10-07318 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| JO GOTTSTEIN, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | |
| | ) | No. 1922 – September 14, 2022 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Robert Gottstein, pro se, Anchorage, Appellant. Notice of nonparticipation filed by Cameron K. Compton, Law Office of Cameron K. Compton, LLC, Anchorage, for Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson Justices.

I.    INTRODUCTION

A divorcing couple negotiated a settlement of issues related to division of their property and payment of spousal support. Under the terms of the settlement, which was adopted in the court's divorce order, the husband was permanently required to pay spousal support in monthly installments and provide security to guarantee the payments. The husband complied with these terms for a number of years, but he stopped paying spousal support and posting the required security in December 2020. The wife then moved to enforce the ordered spousal support. After two hearings the court reduced the unpaid spousal support to judgment and issued a charging order that assigned the

distributions from the husband's interest in a family limited liability company (LLC) to the wife in satisfaction of the husband's past due and future spousal support obligations.

The husband appeals, arguing that the superior court abused its discretion by issuing a charging order that assigned his interest in the family LLC not only to satisfy amounts past due, but also to satisfy future obligations. The husband also contends that the court clearly erred in interpreting the parties' settlement and finding that he breached its terms. In the time between the husband's appeal and our review, the wife received several distributions pursuant to the charging order that appear to extinguish any ongoing obligation between the parties.

We affirm the superior court's finding that the husband failed to pay spousal support as ordered, as well as its decision to enforce its spousal support order. We also affirm the court's issuance of a charging order to allow the wife to recover past amounts due, but we agree with the husband that a charging order may not be used to recover future obligations. However, because we cannot tell from the record before us whether the recent distributions to the wife were made pursuant to an agreement that would end future entanglement between the parties, we remand for further proceedings as needed to determine the parties' positions regarding the recent distributions and the resulting impact on future obligations between the parties.

## II. FACTS AND PROCEEDINGS

### A. When Robert and Jo Gottstein Decided To Divorce, The Superior Court Initially Ordered A Property Division And Spousal Support.

Robert and Jo Gottstein married in 1991. The couple first met in the 1980s, when Jo worked as a retail clerk at a Carrs grocery store. Robert's father co-founded Carrs grocery stores, and Robert received substantial earnings from the related businesses. When Robert and Jo decided to get married in 1991, Jo left her job at Carrs.

During the marriage Robert and Jo resided with their children in a home in

Anchorage. Jo provided full-time care for the children. At some point during the marriage the couple purchased a cabin in Willow.

Jo filed for divorce in 2010. She sought spousal support given her relative lack of education or job experience and inability to support herself. Her filings reflected her general lack of familiarity with the family's finances and properties. A divorce trial took place in 2011.

The superior court issued a divorce decree in June 2011. In its accompanying findings of fact, the court found that Jo had no independent income and was the children's primary caregiver. Meanwhile, Robert had received significant assets from the Gottstein family businesses, including compensation from Safeway after it purchased Carrs. The court also identified Robert's membership interests in multiple family LLCs and noted that he regularly received distributions from the LLCs based on those interests.

Robert's individual business ventures, on the other hand, had incurred substantial debt, some of which he secured with marital property. Robert financed several business opportunities during the marriage that encumbered the Anchorage home and the Willow cabin multiple times over. Robert took out seven loans from his father's living trust totaling over $2.4 million.

Based on these findings, the court divided the couple's property. The court categorized the Anchorage home and the Willow cabin as marital property. According to the superior court's property division findings, the marital assets totaled approximately $2.7 million and the marital liabilities totaled approximately $886,000.[1] The property subject to division was thus valued at approximately $1.826 million. The court then ordered a 50-50 equitable division, requiring Robert to pay $913,000 to Jo. The court

---

[1] The marital liabilities did not include the debt arising from the personal loans between Robert and his father to support Robert's businesses.

split the required payment into three payments to be made over time, functioning as de facto retirement savings for Jo and allowing Robert to liquidate his assets.

The court also awarded Jo five years of rehabilitative spousal support. Acknowledging this court's preference for equitable property division over alimony, the superior court nonetheless found that the "specific circumstances of this case justify a departure from the normal rule and favor an award of rehabilitative support." Due to Robert's failed business ventures, Jo exited the marriage with over-encumbered marital assets and little savings. Even with "rehabilitative education," the court projected that Jo would earn "a small fraction . . . of the income Robert receives from his interests in the [family] LLCs in addition to whatever he can earn with his degree . . . and his business background."

Robert appealed the court's order in July 2011, contesting the property division and valuation.

**B.  In 2012 Robert And Jo Reached A Settlement Intended To Supersede The Court-Ordered Property Division And Spousal Support.**

While Robert's appeal was pending, the parties entered mediation. In February 2012 they reached an agreement on all issues related to property division. The superior court then incorporated the property settlement's terms into the original decree.

The settlement called for a different property division and spousal support arrangement. Under the settlement Robert agreed to pay Jo for various expenses and Jo agreed to vacate the marital home. The settlement also guaranteed Jo permanent spousal support paid on a monthly basis. Robert would pay Jo $3,000 per month in support from January to June 2012, and from July 2012 through June 2014, Robert would pay $7,500 per month. Beginning July 2014 Robert would pay Jo $5,000 per month, "due and payable on the first of each month."

The settlement also required Robert to "obtain security to insure these

[permanent spousal support] payments." Robert could secure the payments with any mix of security that equaled a "minimum required security" dollar amount set by a "Minimum Security Schedule" appended to the settlement. Within 10 days of signing, the settlement required that he post security valued at $500,000; within 75 days, he had to post security valued at $900,000; and by August 2012, the value grew again to $1 million. For every following year, the minimum security value declined by 5%.[2] Robert provided an "initial security mix" consisting of deeds of trust on the Willow cabin and Anchorage home.

## C. In 2020 Jo Moved To Enforce The Settlement's Spousal Support And Minimum Security Terms.

From 2012 to 2020, Jo routinely received monthly spousal support. Robert's payments were sometimes late, however, and he refused Jo's request to automatically wire the monthly payments into her bank account so that she could receive her payments on the first of the month as required.

In December 2020 Robert refused to pay Jo at all. Jo initially notified Robert by email and text that she did not receive her December payment. Robert replied with excuses that evolved over the course of their correspondence. He first indicated that he had sent a check and that his records showed Jo had cashed it. After Jo asked him to resend the check because she had not received it, Robert replied by alleging that Jo had violated the settlement thereby nullifying his obligations to pay her permanent spousal support. Robert stated that he would "never ever consider paying [her] another dime unless [she took him] to court and a judge order[ed] [him] to do so."

Jo then returned to the superior court to enforce the spousal support order. In January 2021 she filed her first motion to enforce and requested an order for Robert to show cause why he should not be held in contempt. In February 2021 Jo filed another

---

[2]    For example, at the time he filed this appeal Robert needed to post $630,249 in security.

motion to enforce after learning that Robert had dissolved the company in which she had previously held a stock certificate to secure Robert's support obligation.

In February the court held a hearing on Jo's first motion regarding Robert's failure to pay. Robert did not participate in the hearing; he did not attend in person and did not answer his phone when the court called to give him the opportunity to participate telephonically. At this hearing Jo presented evidence of Robert's failure to pay monthly support since December 2020 and his unwillingness to make future payments. She also testified regarding Robert's failure to post the required security.

Based on this evidence the court ordered Robert to pay the past due support within three days and to make future payments by electronic deposit to Jo's bank account. The court scheduled a second hearing for March to address Robert's failure to post security. The order also indicated the court would consider substituting Robert's LLC interests as the minimum required security.

Both parties attended the March hearing. Jo's lawyer informed the court that Robert had neither satisfied his past due support obligations from December through February nor paid Jo spousal support for March. Jo asked the court to reduce to judgment Robert's past due obligations and to grant her a charging order to garnish Robert's distributions from Gottstein Properties, LLC, one of the family LLCs, to satisfy future payments. Jo also requested that the court issue deeds of trust on the Anchorage home and the Willow cabin in her name, given Robert's failure to post the required security for ongoing spousal support payments.

Robert explained to the court that he viewed his spousal support obligations as "null and void" because Jo had violated the related terms six years ago. He also suggested that he had paid Jo "five times what the law requires" in spousal support and therefore did not need to pay her more. In response to the court's questioning, Robert did not explain why he had never raised this issue before.

After hearing from the parties, the court rejected Robert's argument that the court could not enforce his spousal support obligation. In particular, the court found that he was not credible because "[Robert] has just decided for whatever personal reasons that he's done with paying his ex-wife and has no intention of paying the [$]5,000 a month."

The court then granted Jo's requested relief. It reduced the unpaid support and a related award of attorney's fees to a judgment (the March judgment) totaling $27,283.91. The court also issued an enforcement order designating Jo as a judgment creditor. The court then granted a charging order pursuant to AS 10.50.380, effectively assigning distributions from Robert's interest in Gottstein Properties, LLC to Jo "to satisfy [Robert's] obligation of lifetime spousal support and additional fees and costs Jo Gottstein incurs in trying to obtain compliance with court orders." The court justified the charging order based on Robert's "repeated[] fail[ures] to abide by . . . court orders." The court also granted Jo deeds of trust to the Anchorage home and the Willow cabin. According to the terms of the deeds of trust, Robert had 90 days to voluntarily comply with his obligations to pay spousal support and to post the associated security; otherwise Jo could foreclose on the Anchorage and Willow properties.

Robert appealed in April 2021.

### D. Gottstein Properties, LLC Distributed Robert's Interests To Jo, Including A Substantial "Equalization Payment."

After filing his appeal, Robert moved to supplement the record on appeal with subsequently filed trial court documents, and we granted his motion.[3] Those documents reflected several distributions by Gottstein Properties, LLC to Jo. On March 31, 2021, Gottstein Properties, LLC distributed two payments of $5,693.88 each to Jo.

---

[3]   *See* Alaska R. App. P. 210(i) ("Materials (including filings, exhibits, electronic recordings, or transcripts) filed with the trial court after the filing date of the notice of appeal may be added to the record on appeal only upon motion . . . .").

Jo reported receiving a distribution totaling $711,882 on April 29 that was "not expected," which she characterized as an "equalization payment." At the start of May, June and July, the LLC again distributed $5,693.88 each month to Jo. Gottstein Properties, LLC indicated in filings that these distributions were made "in accordance with the [c]harging [o]rder's requirements." In June the superior court deemed Gottstein Properties, LLC to have intervened in the litigation after it moved to compel an accounting from Jo.

In August Jo filed two additional motions. On August 6 Jo filed a motion "request[ing] the court dissolve the[] two [charging] orders and no longer require Gottstein Properties, LLC to distribute any funds to Jo." On August 9 Jo filed a motion to inform the court of the larger $711,882 distribution. She indicated that she had "tried to come to some resolution with Robert given this large payment to no avail," as Robert continued to reject her attempts to reconcile his obligations. She thus requested a court order stating that Robert no longer owed her support or security, "end[ing] all financial entanglement between the parties." In support of this request, she identified the amounts that she believed she was owed as of the filing, as well as the payments she had received through distributions from Gottstein Properties, LLC. She calculated that she had been owed $679,504.35, an amount that included: the $27,283.91 judgment, $5,000 per month of unpaid support from April through June, the minimum security value of $630,249, and additional attorney's fees and costs. Meanwhile she had received payments totaling $740,351.40, which included the five distributions from March through July as well as the large April 29 "equalization payment."

Later that month the court issued two orders granting Jo's motions. On August 19 the court issued an order that dissolved the charging orders. On August 20 the court issued another order, stating the "parties' duties under [the 2012 settlement were] fulfilled." Jo was required to release her deeds of trust for the

Anchorage home and the Willow cabin, as well as remove a lis pendens she had filed to begin foreclosing on those properties, within seven days. The order further required Jo to file an accounting within 20 days of what amount, if any, Jo needed to "return to Robert upon conclusion of all issues." The court acknowledged that Jo might incur "more attorney fees and costs to finally resolve this matter with this court."

In September, Jo notified the court that she had withdrawn the lis pendens, released the deeds of trust, and accounted for the additional fees and costs she had incurred. It is not evident whether she provided an accounting of what she owed to Robert, if anything.

## III.    STANDARDS OF REVIEW

"We review an interpretation of an order that incorporates a settlement agreement de novo . . . because the agreement is treated as a contract between the parties."[4] We review a superior court's actions in enforcing its order for abuse of discretion.[5] "We review factual findings for clear error, reversing 'if, upon review of the entire record, we are left with a firm and definite conviction that a mistake has been made.' "[6]

## IV.    DISCUSSION

This case concerns whether the superior court acted within its discretion in granting the charging order to enforce Jo's permanent spousal support award. Robert argues that by granting a charging order "to satisfy a debt not yet due," the court "clearly

---

**4**       *del Rosario v. Clare*, 378 P.3d 380, 383 n.8 (Alaska 2016); *see also Brown v. Brown*, 983 P.2d 1264, 1267 (Alaska 1999).

**5**       *del Rosario*, 378 P.3d at 383 (citing *Horchover v. Field*, 964 P.2d 1278, 1282 (Alaska 1998)).

**6**       *Downs v. Downs*, 440 P.3d 294, 297 (Alaska 2019) (quoting *Dunmore v. Dunmore*, 420 P.3d 1187, 1190 (Alaska 2018)).

abused its discretion." Evaluating Robert's argument first requires some background on how permanent spousal support awards are enforced and how a charging order authorized under AS 10.50.380(a) functions. With that background in mind, we affirm the issuance of the charging order as to the past due spousal support, but we also determine it would be an abuse of discretion to issue a charging order in excess of the March judgment and in satisfaction of future obligations. Because we cannot tell based on the record whether the court abused its discretion in that way here, we remand for further findings to determine the nature of the distributions made from Gottstein Properties, LLC to Jo.

## A.    Background On Permanent Spousal Support And Charging Orders

While we discourage courts from granting permanent spousal support as a means of "fairly allocat[ing] the economic effect of divorce,"[7] instead preferring an equitable property division,[8] the parties themselves may negotiate a property division settlement to their liking that includes permanent spousal support.[9] When the parties reach a property settlement, we generally do not second-guess the benefit of their

---

[7]    AS 25.24.160(a)(2).

[8]    *See Hanlon v. Hanlon*, 871 P.2d 229, 233 (Alaska 1994). When financial disparities between the parties render the property division insufficient, we still prefer to award "rehabilitative" or "reorientation" alimony over permanent spousal support to avoid the "generally undesirable" outcome of "requir[ing] one person to support another on a long-term basis in the absence of an existing legal relationship." *Jones v. Jones*, 835 P.2d 1173, 1179 (Alaska 1992); *see also Hockema v. Hockema*, 403 P.3d 1080, 1089 n.20 (Alaska 2017) ("Awards of long-term alimony and permanent spousal support are not preferred."). We nonetheless recognize that some circumstances make long-term support "just and necessary." *Hanlon*, 871 P.2d at 232-33 (quoting AS 25.24.160(a)(2)).

[9]    *See Keffer v. Keffer*, 852 P.2d 394, 396-98 (Alaska 1993).

bargain.[10] And once the superior court incorporates the parties' settlement into its decree, the parties' obligations flow from the decree itself.[11] "The superior court has inherent power, and also the duty, to enforce" its decrees,[12] including the terms of any settlement incorporated into its decrees, especially against a party who has "shown an indifference to [its] legal force."[13]

In this case, the superior court enforced the settlement by way of a charging order, a unique remedy crafted to comport with the structure of an LLC. "The LLC is a relatively new form of business organization combining limited liability features of corporations with tax treatment of general partnerships."[14] A group of individuals like the Gottstein family may organize an LLC to benefit from pass-through taxation and "enjoy limited liability for [the] LLC['s] actions and liabilities."[15] And once created, the LLC itself "enjoy[s] protection from members' non-business activities," including their

---

[10]     *See Kerslake v. Kerslake*, 609 P.2d 559, 560 n.1 (Alaska 1980) (holding that settlement agreements relating to the division of property "should be controlling in the absence of . . . facts showing the agreement was not made voluntarily and with full understanding"); *Murphy v. Murphy*, 812 P.2d 960, 965 (Alaska 1991) (applying rule from *Kerslake* and explaining that "settlements are favored in law because they simplify, shorten[,] and settle litigation without taking up valuable court resources" (quoting *Interior Credit Bureau, Inc. v. Bussing*, 559 P.2d 104, 106 (Alaska 1977))).

[11]     *See Horchover v. Field*, 964 P.2d 1278, 1284 (Alaska 1994); *Stone v. Stone*, 647 P.2d 582, 584 (Alaska 1982) ("A property settlement incorporated into a divorce decree is merged into the decree, so that the rights of the parties derive from the decree, not the agreement.").

[12]     *Cedergreen v. Cedergreen*, 811 P.2d 784, 786 (Alaska 1991).

[13]     *Horchover*, 964 P.2d at 1285 (quoting *Cedergreen*, 811 P.2d at 786).

[14]     *Duffus v. Baker*, 513 P.3d 264, 267 (Alaska 2022).

[15]     *Id.* at 267.

personal debts.[16]  Others may become a member of an LLC "if the person acquires a limited liability company interest" pursuant to the LLC's operating agreement or the "consent of all of the members," if the agreement is silent.[17]  The acquired interest includes a right to receive financial distributions from the LLC.[18]

A charging order is the appropriate tool for a judgment creditor to reach these distributions.[19]  Alaska Statute 10.50.380(a) permits a judgment creditor of a member of a limited liability company to ask the superior court to issue a charging order, which "charge[s] [the judgment debtor] member's limited liability company interest for payment of [an] unsatisfied amount of the [creditor's] judgment."[20]  In those instances when a judgment creditor seeks to charge a member-debtor's interest, the court assigns

---

[16]     *Id.* (citing Joseph P. Briggett, *The Rights of a Judgment Creditor Against an LLC, Under Various States' Charging Order Statutes*, 39 REV. BANKING & FIN. L. 277, 287-91 (2019)).

[17]     AS 10.50.155; *see also Duffus*, 513 P.3d at 271 n.32.

[18]     *See* AS 10.50.290 ("[U]nless otherwise provided in an operating agreement of the company, a member . . . shares equally in the profits and other assets of the company remaining after all liabilities, including liabilities to members, are satisfied."); AS 10.50.295 ("[I]f a limited liability company makes an interim distribution of its assets to its members, the company shall make the distribution . . . in the manner provided in an operating agreement of the company."); AS 10.50.300 (requiring interim distributions to each member to be equal if operating agreement is silent); AS 10.50.990(8) (defining "interim distribution" as "a distribution of the assets of a limited liability company to the company's members," but excluding final distributions); AS 10.50.345 ("When a member of a limited liability company is entitled to receive a distribution from the company, the member is a creditor of the company with respect to the distribution, and is entitled to all remedies available to a creditor of the company.").

[19]     *See Duffus*, 513 P.3d at 271.

[20]     A judgment creditor is a "person having a legal right to enforce execution of a judgment for a specific sum of money." *Judgment Creditor*, BLACK'S LAW DICTIONARY (11th ed. 2019).

only the member's distributions to the judgment creditor to satisfy their judgment.[21]  In fact, a charging order is the exclusive tool available "to reach a [member]'s interest in" an LLC to avoid interfering with the other LLC members' right to pick their fellow members.[22]

Robert's appeal ultimately concerns the propriety of the charging order issued to enforce his spousal support obligation under his divorce decree.

## B.    The Superior Court Acted Within Its Discretion By Issuing The Charging Order For The March Judgment.

The superior court did not abuse its discretion in granting a charging order to satisfy the March judgment.  The record is replete with Robert's demonstrated "indifference to the legal force" of the divorce decree's requirement of spousal support, giving the court discretion to enforce those terms.[23]  Under AS 10.50.380 a charging order is the exclusive tool for reaching Robert's distributions.  The court described this charging order as "a garnishment of [Robert's] distribution . . . from Gottstein Properties, LLC" that enabled Jo to receive spousal support despite Robert's unwillingness to pay

---

[21]     AS 10.50.380(b) states:  "To the extent a limited liability company interest is charged under (a) of this section, the judgment creditor has only the rights of an assignee of the member's interest."  *See also* Briggett, *supra* note 16, at 299 ("The charging order permits the creditor to have 'only the rights of an assignee of the membership interest.'   This means that the creditor is not entitled to exercise management authority or otherwise to direct the affairs of the LLC." (footnote omitted) (quoting LA. STAT. ANN. § 12:1331 (2019))).

[22]     *Hall v. TWS, Inc.*, 113 P.3d 1207, 1208 & n.3 (Alaska 2005); AS 10.50.380(c).

[23]     *Horchover v. Field*, 964 P.2d 1278, 1285 (Alaska 1998).

her. It was not an abuse of discretion to issue the only remedy available to "charge [Robert's] limited liability company interest for payment of the unsatisfied amount of the [March] judgment."[24]

## C. We Require Further Findings To Determine Whether The Court Abused its Discretion By Issuing The Charging Order To Reach Future Obligations.

To the extent the superior court assigned to Jo "any distributions to which Robert Gottstein . . . is entitled in any amount at any time from Gottstein Properties, LLC" into the future, the superior court may have abused its discretion. It might be an abuse of discretion to charge a member's LLC distributions for payment of an obligation not yet due, such as spousal support due in the future absent some acceleration of future amounts due in the face of a repudiation of all future payment obligations. But we cannot tell based on the trial court record whether any distributions were made in excess of the March judgment and other amounts that the parties may have determined were due and owing.

The record following the issuance of the charging order leaves us uncertain about how the parties treated the distributions made from Gottstein Properties, LLC to Jo. In particular, we cannot glean from the record whether the very large distribution, which appeared to end all ongoing obligations between the parties, constituted an overpayment under the charging order, some sort of agreement by the parties to conclude any ongoing obligations between them, or a decision by the court.

Before the superior court, Jo asserted that the distributions satisfied Robert's past due support payments as of that time, including the $27,283.91 judgment for Robert's past due support from December 2020 through March 2021 and the past due support from April through June 2021. Jo also characterized the very large $711,882

---

[24] AS 10.50.380(a).

distribution as an "equalization payment," which would more than cover the minimum security value of $630,249 that Robert had failed to post as required by the settlement. But the record before us does not contain any judgments for the missed payments between April and June or the "equalization payment." Nor is there any record that Jo filed an accounting recording the distributions that were made and for what purpose.

Robert barely participated after the superior court issued its March orders. Accordingly he did not contest the five $5,693.88 distributions or the very large $711,882 distribution made by Gottstein Properties, LLC. Jo indicated that she "tried to come to some resolution with Robert given [the] large payment to no avail" and that he was not "willing to even negotiate." Jo and the LLC, however, at one point appear to agree that the distributions terminated any outstanding obligations that Robert owed Jo under the settlement.

The only other information regarding the distributions comes from Gottstein Properties, LLC, which intervened after the charging order was issued. The LLC argued in its motion for an accounting that Jo's "collection rights against [the LLC] are limited to the 'unsatisfied amount of the [March] judgment.' " The LLC filed the motion in May, but it nonetheless sent Jo distributions in June and July. In a later filing in which the LLC expressed "non-opposition to [Jo's] motion to dissolve [the] charging orders," the LLC further alleged that "there was an overpayment" and that the charging order may have extended "longer than it should have . . . properly applied." Despite alleging potential misconduct, Gottstein Properties, LLC disclaimed any "further involve[ment] in this matter once the order [dissolving the charging orders] is issued."

The record before us offers only mere suggestions of the parties' intent and conduct, and it does not present any firm evidentiary ground (especially given Robert's

minimal participation) upon which we can base our review.[25]  Because we cannot ascertain the purpose behind the distributions that Gottstein Properties, LLC made to Jo beyond payment of the March judgment granted by the superior court, we cannot determine the propriety of the distributions.[26]  We therefore remand for the superior court to hold further proceedings and to make further findings regarding whether Gottstein Properties, LLC's distributions to Jo were made to satisfy a judgment for unpaid spousal support, to satisfy future amounts of spousal support, or to comply with some sort of agreement between the parties designed to end their financial entanglement.  The superior court should also consider what dispute, if any, remains between Robert and Jo, given that she may have received distributions exceeding what she alleged she is owed under the settlement and that Robert's obligations under the settlement appear to have ceased.

### D. The Superior Court Did Not Clearly Err In Finding That Jo Did Not Breach The Divorce Decree's Terms Related to Spousal Support.

Robert additionally argues that, the propriety of the charging order aside, the superior court misinterpreted the divorce decree's terms related to spousal support because "Jo had violated the agreement" herself.  In particular, he focuses on the

---

[25]  *Cf. Rhodes v. Rhodes*, 867 P.2d 802, 805 (Alaska 1994) ("We cannot determine the factual basis for the superior court's [decision] from its findings, and so we remand the case for adequate findings . . . ."); *Murray v. Murray*, 856 P.2d 463, 466 (Alaska 1993) ("We normally remand a case for more specific findings when the trial court's findings are not detailed or explicit enough to permit meaningful review.").

[26]  *Cf. Mariah B v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 499 P.3d 1021, 1027-28 (Alaska 2021) (quoting *Bird v. Starkey*, 914 P.2d 1246, 1249-50 (Alaska 1996)); *Dobrova v. State, Dep't of Rev., Child Supp. Servs. Div.*, 171 P.3d 152, 159 (Alaska 2007), *overruled on other grounds by Shea v. State, Dep't of Admin., Div. of Ret. & Benefits*, 204 P.3d 1023, 1028 (Alaska 2009) (finding "no abuse of discretion" in court's order denying motion to accept late-filed appeal but remanding to reconsider motion "in light of the circumstances revealed in the supplemental record").

provision granting him exclusive right to modify the security guaranteeing Jo's spousal support payments, arguing that Jo violated this provision at some point. He ultimately claims that by failing to consider this argument and enforcing the spousal support terms, the court "clearly abused its discretion by failing to consider the terms of the [decree]."

We reject this argument. During the March 2021 hearing, Robert argued his obligation to pay Jo "$5,000 a month for the rest of her life" was contingent on her "comply[ing] with the settlement agreement, which she has not." The court pressed Robert regarding "when . . . [Jo] breach[ed] the settlement," which Robert hesitated to answer, stating he'd have to "look at years ago e-mails." He eventually answered that the alleged breach happened "at least half a dozen" years ago, only to backtrack and say he did not know when exactly she breached but that she "[p]robably" did more than six years ago. The court did not find this testimony credible. Based on Robert's equivocal testimony, the court did not clearly err in finding that Jo did not violate the agreed-upon terms related to spousal support and therefore that Robert continued to owe Jo $5,000 monthly in permanent spousal support at that time.[27] We therefore affirm the superior court's determination that, at the time of the contested evidentiary hearings, Robert continued to owe Jo spousal support under the divorce decree's terms.

## V. CONCLUSION

We REMAND for further findings and proceedings consistent with this decision. We do not retain jurisdiction.

---

[27] *See Brown v. Brown*, 983 P.2d 1264, 1267 (Alaska 1999) ("But when the trial court looks to extrinsic evidence to interpret an agreement, we review its factual determinations under the clearly erroneous standard and will reverse only if the facts do not support the trial court's interpretation.").